**Douglas PARKER, Plaintiff–Appellant–Cross–Appellee,**

v.

**COLUMBIA PICTURES INDUSTRIES, Defendant–Appellee–Cross–Appellant,**

**Sony Pictures Entertainment, Inc., Defendant–Appellee,**

**Sony Corporation of America, Defendant.**

**Docket No. 99–7104.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 13, 1999

Decided: Feb. 28, 2000

Stanley N. Futterman, New York, NY, for plaintiff-appellant-cross-appellee.

Lauren Reiter Brody, Rosenman & Colin LLP, New York, NY, for defendants-appellees.

John F. Suhre, Washington, D.C. (C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel), for Amicus Curiae Equal Employment Opportunity Commission.

Before: WINTER, Chief Judge, NEWMAN, and SOTOMAYOR, Circuit Judges.

Chief Judge WINTER dissents in part in a separate opinion.

SOTOMAYOR, Circuit Judge:

Appellant Douglas Parker brought this action claiming that his former employer, Sony Pictures Entertainment, Inc. ("SPE"), discharged him because of his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (1994 & Supp.1999) ("the ADA") and the New York State Human Rights Law, N.Y. Exec. Law § 296 (McKinney 1993 & Supp.1999). Parker also claimed that SPE violated the ADA by retaliating against him for filing a complaint with the Equal Employment Opportunity Commission, as well as denied him medical leave in violation of the Family and Medical Leave Act, 29 U.S.C. § 2612(a)(1)(D) (1999) ("the FMLA").

On March 30, 1998, SPE moved for summary judgment on all claims. In addition, Columbia Pictures Industries, Inc. ("CPI"), whom Parker had also named as a defendant based on its alleged common personnel functions with SPE, moved for summary judgment on the independent ground that it was not Parker's employer. Parker then cross-moved to amend his complaint to add a claim for breach of contract, on the ground that SPE had refused to grant him the full period of leave to which he was entitled under the company's benefit plan.

On September 4, 1998, the United States District Court for the Southern District of New York (Lewis A. Kaplan, Judge) granted the defendants' motion for summary judgment on Parker's discriminatory discharge claims and denied Parker's cross-motion for leave to amend his complaint. The court denied the motion for summary judgment on Parker's other claims, and denied CPI's motion for summary judgment on the ground that it was not Parker's employer. For the reasons that follow, we vacate the district court's grant of summary judgment in favor of SPE on the discriminatory discharge claims, but affirm its denial of Parker's cross-motion for leave to amend his complaint. We also affirm the court's denial of summary judgment in favor of CPI.

## BACKGROUND

In 1993, Douglas Parker began working at SPE's Film and Tape Operations facility in Inwood, New York. The Inwood facility prepares and services film and videotape products that are used to create custom-made videotapes for SPE customers. As the Executive Director for Technical Ser-

vices at that facility, Parker supervised a staff of up to thirty-one employees, attended frequent meetings with his superiors, worked with other facility employees, and monitored his staff's work product on videotape equipment located at the facility.

On Thursday, March 16, 1995, Parker injured his back while working at the facility. He returned to work the next day and for part of the following Monday, but then left to seek medical attention. Parker did not return to the Inwood facility, but instead stayed home to recover, and, he claims, to continue performing his job from home via telephone, fax, and e-mail. In mid-May 1995, while still recovering at home, Parker decided to undergo back surgery and informed SPE's human resources department that he would be out of work for an extended period of time. SPE then sent Parker a letter confirming his leave of absence and informing him of his rights under the FMLA and under SPE's short-term disability plan. According to the company's short-term disability policy, Parker was entitled to up to six months' paid leave. In June 1995, SPE filed an internal Vacation/Absence form listing Parker's leave as beginning on March 17, 1995, the day after his accident. Parker claims he did not see this form, and thus did not learn the date on which SPE deemed his leave to have begun, until discovery in this action.

Parker underwent back surgery on May 31, 1995. Over the next three months, pursuant to SPE's disability policy, he submitted a series of medical reports to SPE's human resources department updating the company on his medical condition. In the first several of these reports, his doctor prescribed "no work" as part of the treatment plan. The final two reports, dated August 24, 1995 and September 8, 1995, omitted this directive, though they did state their findings regarding Parker's condition as "unchanged since last visit." Parker alleges that sometime near the end of August, he spoke to his supervisor, Bill Theis, about returning to work at the In-

wood facility on a part-time basis and that Theis agreed to investigate that possibility. On September 11, 1995, however, while Parker was still at home on leave, SPE human resources employee Mary Cipolla informed him that he had exhausted SPE's six-month limit on paid leave and that his employment at SPE consequently would be terminated on September 15, 1995. Cipolla advised Parker to apply for additional benefits under SPE's long-term disability plan and offered to send him the forms, which he completed on September 13, 1995. Parker subsequently applied for Social Security disability benefits as well. SPE terminated Parker on September 15, 1995.

On March 28, 1996, Parker filed a complaint with the EEOC, claiming that SPE had violated the ADA by discharging him because of his disability. After applying unsuccessfully for another position at SPE in June 1996, Parker filed a second EEOC charge, alleging that SPE had refused to rehire him in retaliation for filing his first complaint. The EEOC dismissed both complaints and issued right-to-sue letters. Parker then filed the instant action against SPE, claiming discriminatory discharge and retaliation under the ADA and the New York State Human Rights Law, as well as violation of the leave provisions of the FMLA. Parker also named as defendants SPE's parent company, the Sony Corporation of America ("SCOA"), and Columbia Pictures Industries, another subsidiary of SCOA whose name appeared on several of SPE's employment forms.

The defendants moved for summary judgment on all claims, and Parker cross-moved to amend his complaint to add a claim for breach of contract on the ground that the defendants had failed to grant him a full six months' leave in accordance with SPE's short-term disability policy. The district court granted summary judgment to SCOA on all claims and to SPE and CPI on Parker's discriminatory discharge claims, but denied summary judgment to both SPE and CPI on Parker's retaliation

and FMLA claims. The court also denied Parker's cross-motion for leave to amend his complaint.

The parties subsequently reached a settlement of Parker's retaliation and FMLA claims. Following the entry of a final judgment on January 12, 1995, disposing of all claims, Parker appealed the district court's grant of summary judgment on his discriminatory discharge claims and its denial of leave to amend his complaint. CPI cross-appealed the district court's decision to deny summary judgment dismissing it from the case, arguing that it was not Parker's employer.

## DISCUSSION

I. *Discriminatory discharge under the Americans with Disabilities Act*

■ The district court granted summary judgment to the defendants on Parker's discriminatory discharge claims on the ground that Parker had not made out a prima facie case under the ADA.[1] We review this grant of summary judgment *de novo. See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir.1998). In determining whether summary judgment was appropriate, we must resolve all ambiguities and draw all inferences in favor of the non-moving party, and we will affirm only if the record reveals no genuine issue of material fact for trial. *See id.*

■ To establish a prima facie case of discriminatory discharge under the ADA, an employee bears the burden of demonstrating that: 1) he was an "individual who has a disability" within the meaning of the

statute; 2) the employer had notice of his disability; 3) he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation. *See Stone v. City of Mount Vernon*, 118 F.3d 92, 96–97 (2d Cir.1997), *cert. denied*, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). We have ruled that failure to make reasonable accommodation, when the employee has satisfied the first three elements of his claim, amounts to discharge "because of" his disability. *See, e.g., Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir.1998). If the plaintiff succeeds in establishing a prima facie case of disability discrimination, the burden shifts to the employer to demonstrate that the employee's proposed accommodation would have resulted in undue hardship. *See Stone*, 118 F.3d at 97.

■ The court below found that Parker failed to establish both the third and fourth elements of his prima facie case. For the reasons explained below, we disagree with the district court and find that Parker has raised genuine factual questions as to both his ability to perform the essential functions of his job and SPE's motive for discharging him.[2]

A. *Parker's ability to perform the "essential functions" of his job*

To satisfy this element of his prima facie case, Parker claimed that if SPE had accommodated his disability by permitting him to work part-time, he would have been capable of returning to his position at the

---

**1.** For the same reasons, the district court also granted summary judgment to the defendants under the NYSHRL. Because the analysis under the state law parallels that used in the ADA context for all issues relevant to this appeal, *see Micari v. Trans World Airlines, Inc.*, 43 F.Supp.2d 275, 279 (E.D.N.Y.1999), we reverse the grant of summary judgment on Parker's state law discrimination claim as well.

**2.** On appeal, SPE contends that summary judgment was also appropriate because Parker, who was disabled only temporarily, did

not establish that he had a "disability" within the meaning of the statute and thus failed to satisfy the first element of his prima facie case. The district court, however, did not reach this question. Because the resolution of this issue requires a review of the record to determine the precise nature and extent of Parker's incapacity, *see, e.g., Wernick v. Federal Reserve Bank*, 91 F.3d 379, 383–84 (2d Cir.1996), we do not address the matter here but instead leave it for the district court to consider on remand.

Inwood facility. The district court found, however, that Parker could show no genuine factual dispute on this question, because the physical difficulties Parker described on his applications both for Social Security and for SPE's long-term disability benefits prevented him from making his subsequent claim that he could perform the essential functions of his job with reasonable accommodation.

█ With respect to statements made to the Social Security Administration ("SSA"), the Supreme Court has held that statements made for the purpose of securing disability benefits, describing why the claimant is too disabled to work, do not necessarily bar the disabled individual from claiming in an ADA action that he can perform the essential functions of the job at issue. *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, ——, 119 S.Ct. 1597, 1602, 143 L.Ed.2d 966 (1999). Rather, in an ADA case in which the plaintiff has made an earlier claim for Social Security Disability Insurance ("SSDI"), the court must undertake a fact-specific analysis of whether the claims made in the SSDI application directly contradict the allegations made in the ADA context. *See id.* at ——, 119 S.Ct. at 1603. Where a case involves an apparent conflict between the two sets of statements, the plaintiff must offer some explanation for the inconsistency. "To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of the job, with or without 'reasonable accommodation.'" *Id.* at ——, 119 S.Ct. at 1604.

The Court in *Cleveland* applied this analysis to vacate summary judgment where the plaintiff had stated in her SSDI application that she was "unable to work due to [her] disability," but claimed in her ADA case that she was capable of working with reasonable accommodation. *Id.* at ——, 119 S.Ct. at 1600. Although the plaintiff's SSDI forms stated at various points that she had "not been able to work since" her termination from her job, that she was "still disabled," and that she was "totally disabled," *id.* at ——, ——, 119 S.Ct. at 1600, 1604, the Court accepted the plaintiff's assertion that these statements "were made in a forum which does not consider the effect that reasonable workplace accommodations would have on the ability to work." *Id.* at ——, 119 S.Ct. at 1604 (quoting Pet.'s Br. at 43). The Court contrasted these statements to those made in the context of an ADA action, which go directly to the question of reasonable accommodation. *See id.* at ——, 119 S.Ct. at 1601 (noting that the ADA was designed "to guarantee [disabled] individuals equal opportunity" to work by requiring that employers make accommodations where appropriate). Given this key contextual difference, the Court found that the plaintiff's statements to the SSA regarding her "total disability" did not automatically bar her from claiming that she could perform her job with reasonable accommodation. Rather, the plaintiff deserved a chance to reconcile those statements with her position in the ADA action. The Court accordingly remanded the case so that the parties would "have the opportunity in the trial court to present, or to contest, [the plaintiff's] explanations [for the contradiction], in sworn form where appropriate." *Id.* at ——, 119 S.Ct. at 1604.

While *Cleveland* therefore gives ADA plaintiffs wide latitude to overcome apparent conflicts between their SSDI applications and their statements alleging discriminatory discharge, it does not preclude summary judgment in such cases altogether. In particular, summary judgment may be appropriate under *Cleveland* where the SSDI and ADA claims "involve directly conflicting statements about purely factual matters." *Id.* at ——, 119 S.Ct. at 1601 (contrasting plaintiffs' statements with contradictory assertions such as "'The light was red/green,' or 'I can/cannot raise my arm above my head.'"). Interpreting

*Cleveland,* we thus have affirmed summary judgment where the plaintiff stated to the SSA that he was unable to stand or walk, but then claimed in his subsequent ADA action that he was capable of both standing and walking. *See Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 7–9 (2d Cir.1999). In contrast to the *Cleveland* plaintiff, the plaintiff in *Mitchell* had offered "purely factual" statements that directly contradicted one another and could not be reconciled with any amount of explanation. *See id.* at 7. Moreover, the plaintiff in *Mitchell* had won disability benefits based on his earlier representations to the SSA. *See id.* In these circumstances, we held, judicial estoppel prevented the plaintiff from pursuing an ADA action claiming that he was able to stand and walk. *See id.*

Although this case presents a close question, we conclude that Parker's statements in his applications for long-term disability and SSDI benefits do not fall within the category of "directly conflicting statements about purely factual matters" that we faced in *Mitchell.* In his September 13, 1995 application for long-term disability benefits, Parker responded to the question, "Why are you unable to work?" by stating that he was "completely incapacitated—disabled—treatment daily." Later that month, he stated in his SSDI application that he "ha[d] problems sitting standing and walking for sustained periods; [had] constant pain ... [and] problems in legs." Parker also asserted in his SSDI application that he "became unable to work" on March 16, 1995, and that he was "still disabled." Parker's request for long-term benefits was approved on October 10, 1995, although his SSDI claim ultimately was denied.

■ We agree with the district court insofar as it found an apparent conflict between Parker's statements in his benefits applications and his affidavit to the district court, in which Parker claimed that he was capable of returning to work in September 1995 on a gradual or part-time basis. Nonetheless, we find that this facial conflict is not enough to warrant summary judgment in favor of SPE. Reading Parker's benefits applications in context, a reasonable juror could find he was in fact capable of performing the essential functions of his job with a reasonable accommodation. As the Supreme Court has noted, "[a]n SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely 'I am disabled for purposes of the Social Security Act.'" *Cleveland,* 526 U.S. at ——, 119 S.Ct. at 1601. Consequently, Parker's statement in his SSDI application that he "became unable to work" in March 1995 and that he was "still disabled" does not dictate the factual conclusion that he was incapable of returning on a part-time basis or with other accommodation.

Furthermore, Parker adequately explained the apparent conflict between his benefits application and his affidavit to the court. Here, as in *Cleveland,* Parker's SSDI statements were made in a forum unconcerned with "the effect that reasonable workplace accommodations," including part-time employment, "would have on the ability to work." *Id.* at ——, 119 S.Ct. at 1604. Rather, the application form asked only why he was unable to continue working generally. Given that SPE had informed Parker that he was being terminated because he was unable to return to work upon the expiration of his disability leave, a reasonable jury could find that Parker's statements to the SSA constituted an explanation for his termination rather than a description of his actual physical abilities. Accordingly, Parker's statements on his application for Social Security benefits do not, as a matter of law, preclude him from showing that with reasonable accommodation, he was capable of performing the essential functions of the job in accordance with the ADA.

Likewise, Parker's statements on his application for long-term disability benefits do not warrant the grant of summary

judgment in SPE's favor. On that application, Parker informed his insurance company that he was "completely incapacitated—disabled" and was undergoing "treatment daily." The insurance company approved his request for benefits on October 10, 1995. The district court concluded that these statements, like his representations to the Social Security Administration, precluded Parker from prevailing in an ADA action based on the claim that he was capable of returning to work with reasonable accommodation in September 1995.

■■ We conclude, however, that under *Cleveland*, Parker's explanation for the contradiction is sufficient to survive summary judgment. In his Rule 56.1 statement opposing summary judgment, Parker asserted that he completed the application for long-term benefits "with the understanding that ... his medical need for continued physical therapy entitled him to long-term disability benefits *once he was being denied the opportunity to work*, notwithstanding that he felt able to endure the pain and discomfort involved in getting to his former place of employment and was desirous of doing so...." (Emphasis added). Given this explanation, a reasonable jury could find that Parker's description of himself as "completely incapacitated—disabled" referred to SPE's explanation for terminating him and not to whether he was capable of performing the essential functions of the job with reasonable accommodation.[3] In light of Parker's proffered explanation for the apparent conflict between his benefits forms and his affidavit in this ADA action, therefore, we find that under *Cleveland*, his benefits forms do not preclude him from establishing a triable question regarding the "essential functions" element of his prima facie case.

■ Nor do we agree with the district court that the record as a whole warrants summary judgment. On the contrary, the record reveals a genuine factual dispute as to whether Parker was capable of performing the job with reasonable accommodation when he was terminated in September 1995. First, according to Parker, he told his supervisor in August and September 1995 that he was capable of returning on a part-time basis, a belief he repeated to two nurses working with SPE's workers' compensation program. Second, Parker's medical condition at the time of his termination is far from clear. His medical reports ceased prescribing "no work" on August 24, 1995, reporting instead only that his condition was "unchanged." Moreover, the subsequent reports that omitted the "no work" notation also recommended more aggressive physical therapy, supporting an inference that Parker was ready for a recovery program that could include some work. Furthermore, Parker's doctor testified in her deposition that she would have been "delighted" in September 1995 to certify his return to work on a part-time basis. Based on

---

**3.** In addition, neither Parker's SSDI application nor his long-term disability benefits request subjects him to judicial estoppel under *Mitchell*. In *Mitchell*, we noted the two requirements for judicial estoppel in the ADA context: First, the party subject to estoppel must have taken a contradictory position in an earlier proceeding; and second, that position must have been adopted by the tribunal. *See* 190 F.3d at 6. Parker's statements on his SSDI application clearly do not fall within this category, since that application—unlike the plaintiff's application in *Mitchell*—ultimately was denied. Parker therefore received no "benefit" from these statements. *Cf. id.* at 7 (noting that the plaintiff's prior statements "were accepted by ... administrative tribu-

nals, resulting in a determination in his favor").

Moreover, although Parker did benefit from his earlier statements in applying for long-term disability benefits, those statements do not present the same irreconcilable conflict with his ADA claim that we faced in *Mitchell*. *See id.* On the contrary, Parker's explanation for the apparent conflict is sufficient to survive summary judgment. *See supra.* Parker's long-term disability application therefore does not constitute an "inconsistent position [taken] in an earlier proceeding" for purposes of judicial estoppel under *Mitchell*. *See id.* at 7 (internal quotation marks and citation omitted).

this evidence, a reasonable jury could conclude that any total prohibition on Parker's returning to work ended in August 1995, and that he was capable of returning at least on a modified schedule at that time.[4] Parker thus has raised a triable issue as to whether, with the temporary accommodation of part-time work,[5] he was capable of performing the essential functions of his job at SPE, and summary judgment on this ground was inappropriate.

### B. *"Because of" disability*

■ As an alternative to its "essential functions" analysis, the district court granted summary judgment in favor of SPE because Parker had not established the final element of his prima facie case, *i.e.*, that SPE had terminated him "because of" his disability. In his affidavit opposing SPE's summary judgment motion, Parker conceded that there was at least one reason other than his back injury for his discharge: he claimed that his new supervisor, Brunella Lisi, wanted to discharge him so she could hire a more "loyal" employee in his place, and that his disability provided a "convenient means"— *i.e.*, a legitimate excuse—for doing so. According to the district court, Parker's allegation that office politics rather than disability discrimination prompted his termination "renders his discriminatory discharge claim meritless."

■ The propriety of the district court's conclusion on this point involves an issue not yet addressed in this Circuit: the applicability of "mixed-motive" analysis under the ADA. Parker's claim that his disability served as an excuse to discharge him alleges a mixed-motive theory of causation, under which disability was one motivating factor in SPE's adverse employment action but was not its sole but-for cause. *See* 42 U.S.C. § 2000e–2(m) (1994) (establishing liability for mixed-motive actions under Title VII of the Civil Rights Act of 1964); *cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 241–42, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) ("It is difficult for us to imagine that, in the simple words 'because of,' Congress meant to obligate a [Title VII] plaintiff to identify the precise causal role played by legitimate and illegitimate motivations in the employment decision she challenges. We conclude, instead, that Congress meant to obligate her to prove that the employer relied upon [impermissible] considerations in coming to its decision."). Although the ADA includes no explicit mixed-motive provision, a number of other circuits have held that the mixed-motive analysis available in the Title VII context applies equally to cases brought under the ADA. *See Baird v. Rose*, 192 F.3d 462, 470 (4th Cir.1999); *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033–34 (7th Cir.1999); *McNely v. Ocala Star–Banner Corp.*, 99 F.3d 1068, 1076 (11th Cir.1996); *Katz v. City Metal Co.*, 87

---

4. Contrary to the suggestion of the dissent, *see post* at 343, the record does not indicate that employees on medical leave were required to submit a clearance from their doctors *prior to* returning to work. SPE's Unpaid Family and Medical Leave policy states only that employees returning from disability leave "will be required to bring a certificate from their health care provider authorizing their return to work." The record does not indicate when employees are required to furnish this certification, and the context of the policy in fact suggests that they must produce the document upon returning to work, not before. On summary judgment, we are unprepared to conclude from this evidence that Parker's failure to produce a doctor's note clearing him

for part-time work relieved SPE entirely from investigating that potential accommodation.

5. Although part-time work constitutes a reasonable accommodation under the ADA, *see* 42 U.S.C. § 12111(9)(B), an employee who proposes this accommodation may only prevail in an ADA action if he can demonstrate that he could perform the essential functions of his job while working part-time. The district court in this case did not consider whether Parker would have been able to perform the essential functions of his position with part-time work. Because a determination on this issue requires further factual development regarding the nature and responsibilities of Parker's job, we do not reach this question on appeal.

F.3d 26, 33 (1st Cir.1996); *Buchanan v. City of San Antonio,* 85 F.3d 196, 200 (5th Cir.1996); *Pedigo v. P.A.M. Transp., Inc.,* 60 F.3d 1300, 1301 (8th Cir.1995). We agree with the analysis in these cases and consequently vacate the district court's grant of summary judgment on the ground of causation.

The ADA makes it unlawful for an employer to discriminate against a qualified individual *"because of* the disability of such individual." 42 U.S.C. § 12112(a) (emphasis added). This statutory language differs from that used in the Rehabilitation Act of 1973, which prohibits entities receiving federal funding from discriminating "solely by reason of [an individual's] disability." 29 U.S.C. § 794 (1994). The elimination of the word "solely" from the causation provision of the ADA suggests forcefully that Congress intended the statute to reach beyond the Rehabilitation Act to cover situations in which discrimination on the basis of disability is one factor, but not the only factor, motivating an adverse employment action. Such a reading is consistent with the broad purpose of the ADA, which is designed "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *see also McNely,* 99 F.3d at 1074 ("[W]e believe that importing the term 'solely' into the ADA is not warranted under the statute's plain language . . . and is not consistent with the explicitly stated purpose of the statute. . . .").

The causation standards applicable to Title VII claims lend further support to this interpretation of the ADA. Like the ADA, Title VII prohibits employers from discriminating "because of" any protected characteristic, including "race, color, religion, sex, or national origin." 42 U.S.C.

§ 2000e–2(a)(1). In the Civil Rights Act of 1991, Congress clarified the Title VII "because of" causation standard by amending the statute explicitly to impose liability on employers where discrimination "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m). Although that amendment does not, by its terms, apply to violations of the ADA, nothing in either the language or purpose of either statute suggests that Congress intended different causation standards to apply to the different forms of discrimination. Rather, the "substantially identical . . . causal language" used in Title VII and the ADA, *McNely,* 99 F.3d at 1075, indicates that the expansion of Title VII to cover mixed-motive cases should apply to the ADA as well. In light of the statutory language and purpose underlying the ADA, therefore, we join those circuits that have held that, in establishing a prima facie case of disability discrimination, a plaintiff need not demonstrate that disability was the sole cause of the adverse employment action. Rather, he must show only that disability played a motivating role in the decision.

Under this standard of causation, Parker has succeeded in establishing the final element of his prima facie case. Although Parker claimed that his termination resulted from Lisi's plan to replace current employees with employees who were loyal "only [to] her," he also alleged that, among the allegedly disloyal employees, he was singled out for quick termination because of his disability. These allegations are sufficient to satisfy Parker's burden of claiming that his disability was a motivating factor in his termination.[6] *Cf. Baird,* 192 F.3d at 469 (reversing dismissal of ADA claim where plaintiff alleged

---

6. SPE dismisses Parker's theory that Lisi wanted to "get rid of him" as "conclusory" and "pure conjecture." Def.'s Reply Affidavit in Support of Def.'s Motion for Summary Judgment; Def.'s Br. at 42. We do not attempt to resolve this factual dispute, nor do we address whether the record in fact sup-

ports an inference that personal motives played a role in Parker's termination. Rather, we hold only that Parker's allegations on this point do not preclude him from establishing a prima facie case of disability discrimination under the ADA.

that both disability and absenteeism contributed to her exclusion from school activity); *McNely*, 99 F.3d at 1070–71, 1077 (finding the ADA applicable where both insubordination and disability played a role in plaintiff's termination). Accordingly, the district court erred in concluding that Parker's allegations of office politics precluded him from establishing a prima facie case under the ADA.

■ SPE argues that even if the district court erred in rejecting a mixed-motive analysis, summary judgment was nonetheless appropriate because Parker cannot establish that his disability was even a motivating factor in his termination. Specifically, SPE claims that it fired Parker not because he was disabled, but because he was unable to return to work when his six months' disability leave expired. Terminating a disabled employee, however, who can perform the essential functions of the job but cannot return to work because the employer has denied his request for reasonable accommodation, is disability discrimination under the ADA. "Failure to consider the possibility of reasonable accommodation for ... disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 143 (2d Cir. 1995). A reasonable trier of fact could conclude that SPE's decision to terminate Parker falls within this category. The record includes evidence that SPE declined to consider Parker's proposal of part-time work, despite his request for such an accommodation in August 1995 and again immediately following his termination in September. Although SPE claims that Parker was not medically cleared for work at that time, his medical reports no longer prescribed "no work," suggesting at least the possibility that Parker had recovered enough to resume his duties with some accommodation. Moreover, the record suggests that the company did nothing following Parker's request to ascertain his ability to work, nor did it inform him that his perceived physical infirmity was the main obstacle to his return. Rather, SPE ignored his request, apparently concluded that he was wholly disabled, and terminated him upon exhaustion of his leave benefits.

■ The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover, nor does it force an employer to investigate every aspect of an employee's condition before terminating him based on his inability to work. At the very least, however, an employee who proposes an accommodation while still on short-term leave—as Parker did here, at least two weeks prior to his termination—triggers a responsibility on the employer's part to investigate that request and determine its feasibility. An employer who fails to do so, and instead terminates the employee based on exhaustion of leave, has discriminated "because of" disability within the meaning of the ADA. As the record reveals a genuine factual dispute on this issue, Parker has satisfied the causation element of his prima facie case.

Because the district court concluded that Parker did not establish a prima facie case of disability discrimination, it did not reach the question of whether the accommodation of part-time work would have resulted in undue hardship. *See Stone*, 118 F.3d at 96–97 (discussing order of proof in ADA cases). We therefore do not consider this issue on appeal. Rather, we vacate the grant of summary judgment and remand the case for a determination of whether Parker has created a triable question of fact on the remaining elements of his ADA claim.

## II. *Parker's motion for leave to amend the complaint*

Parker claims that the district court abused its discretion in denying him leave to amend his complaint to add a breach of

contract claim. The court denied Parker's request on the grounds that it was both futile and untimely, finding that Parker had alleged no facts to support a breach of contract claim and that, in any event, the request did not comply with the schedule the court had set for proceedings in the case. We find that the court erred in characterizing Parker's request as futile, but that it did not abuse its discretion in denying the request on the basis of un-timeliness.

## A. *Futility*

 Leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Where the amended portion of the complaint would fail to state a cause of action, however, the district court may deny the party's request to amend. *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979). The court below denied Parker's motion for leave to amend his complaint on the ground that he could not state a claim for breach of contract, be-cause, as an at-will employee, Parker could not point to a contract on which such a claim would be based. Parker argues on appeal, however, that the company's short-term disability benefits plan constitutes such a contract. We agree with Parker that SPE's benefits policy provides a suffi-cient basis for his breach of contract claim, and therefore that his proposed amend-ment would not have been futile.

 Under New York law, an employ-er's virtually unfettered power to termi-nate an at-will employee does not negate its duty to abide by promises made prior to termination. *See Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1196 (2d Cir.1989). In *Leonelli,* we rejected a defendant's ar-gument that because the plaintiff was an at-will employee, he could not state a breach of contract claim for denial of bene-fits. *See id.* at 1198. On the contrary, we found that a company benefits plan may constitute a binding promise regardless of the employee's status. *See id.* at 1198

("Obviously, the fact that [the plaintiff] was an employee at will, subject to dis-charge anytime, does not relieve [the de-fendant] of the obligation of dealing fairly with its employees and of living up to its promise to pay limited benefits to such employee when he is incapacitated or ill."). Similarly, under the benefits plan at issue in this case, Parker's salary and length of service entitled him to six months' leave, which would take the form of "salary con-tinuation benefits." Parker's at-will status would not alter that entitlement.

## B. *Timeliness*

 Regardless of the merits of Par-ker's breach of contract claim, the district court did not abuse its discretion in deny-ing Parker's motion on the ground that the motion was brought after the court-or-dered deadline for amending the plead-ings. Our conclusion on this point involves analysis of two of the Federal Rules of Civil Procedure: Rule 15(a), which pro-vides for amendments to the pleadings, and Rule 16(b), which directs district court judges to set scheduling orders limiting the time to make such amendments. Rule 15(a) requires courts to grant leave "freely ... where justice so requires," and we have held repeatedly that "mere delay" is not, of itself, sufficient to justify denial of a Rule 15(a) motion, *see, e.g., Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (citations and internal quotation marks omitted). We have not yet had occasion, however, to balance that principle with Rule 16(b)'s requirement that scheduling orders "shall not be modified except upon a showing of good cause," *see* Fed.R.Civ.P. 16(b).

According to Rule 16(b), within 90 days after the appearance of the defendant and within 120 days of the service of a com-plaint on a defendant, the district court shall enter a scheduling order setting deadlines for subsequent proceedings in the case, including joinder of parties and amendments to the pleadings. *See id.* By limiting the time for amendments, the rule

is designed to offer a measure of certainty in pretrial proceedings, ensuring that "at some point both the parties and the pleadings will be fixed." *See* Fed.R.Civ.P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)). The rule provides, however, that in certain cases the court may determine that "[the deadline] cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* In such cases, where the moving party has demonstrated good cause, the court may grant leave to amend the scheduling order to extend the deadline.

Several circuits have ruled that the Rule 16(b) "good cause" standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings. As the Eleventh Circuit has noted, "[i]f we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir.1998) (per curiam); *see also In re Milk Prods. Antitrust Litig.,* 195 F.3d 430, 437 (8th Cir.1999) ("When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order."); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir.1992) ("Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation[,] and its standards may not be short-circuited by an appeal to those of Rule 15."); *Riofrio Anda v. Ralston Purina Co.,* 959 F.2d 1149, 1154–55 (1st Cir.1992) (relying on Rule 16(b) in refusing to allow an amendment after the scheduling order deadline despite the lenient standards of Rule 15(a)). Several district courts in our

Circuit have adopted this rule as well. *See Covington v. Kid,* No. 94 Civ. 4234(WHP), 1999 WL 9835, at *3 (S.D.N.Y. Jan.7, 1999) (finding that a movant who fails to comply with a scheduling deadline must satisfy "good cause" requirement of Rule 16(b) as well as standards of Rule 15(a)); *Carnrite v. Granada Hosp. Group, Inc.,* 175 F.R.D. 439, 446 (W.D.N.Y.1997) (same); *Mayes v. Local 106, Int'l Union of Operating Eng'rs,* No. 86–CV–41, 1992 WL 335964, at *9 (N.D.N.Y. Nov.12, 1992) (same).

 We now join these courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover, we agree with these courts that a finding of "good cause" depends on the diligence of the moving party. *See In re Milk Prods.,* 195 F.3d at 437 (finding no good cause where dismissal of the first complaint "should have alerted plaintiffs" to inadequacies in the second complaint); *Sosa,* 133 F.3d at 1419 (finding no good cause where party failed to discover necessary information and was on notice in advance of the deadline that her complaint was inadequate); *Johnson,* 975 F.2d at 609 (refusing to find good cause under Rule 16(a) where party received notice long in advance of the deadline that the complaint did not name all necessary parties).

In this case, the district court held that Parker had "not demonstrated cause for his failure to comply with the Court's deadline." We treat this holding as an explicit "good cause" determination under Rule 16(b), and we affirm. Parker claims that he did not discover his contractual entitlement to six months' paid leave until receiving SPE's motion for summary judgment, in which SPE referred to Parker's "entitlement" to benefits. This argument lacks merit. Parker received a copy of SPE's leave policy, on which he now bases his contract claim, when he began work at

the company in 1993. Furthermore, upon terminating him in September 1995, SPE specifically informed Parker that his leave had begun on March 17, 1995 and that he had exhausted his maximum period of leave benefits. Parker thus was aware not only of his rights under the policy prior to and throughout the course of this litigation, but also of SPE's allegedly wrongful conduct in beginning his leave on March 17, while Parker was allegedly working at home. When he commenced this action, therefore, Parker had all the information necessary to support a breach of contract claim, and nothing he learned in discovery or otherwise altered that fact. *Cf. Sosa*, 133 F.3d at 1419 (refusing to find good cause where "the information supporting the proposed amendment to the complaint was available to [the moving party] even before she filed suit"). Accordingly, we affirm the district court's denial of leave to amend Parker's complaint.

### III. *CPI's motion for summary judgment*

■ Although we find that the district court erred in granting summary judgment to SPE on Parker's discrimination claims, we affirm its denial of summary judgment in favor of CPI.[7] The record reveals a genuine issue of material fact regarding whether CPI acted as Parker's "employer" so as to render CPI liable to Parker in this discrimination action.

■ To prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an "integrated enterprise" with the employer, thus making one liable for the illegal acts of the other. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir.1995) (discussing standards of civil

rights liability in the parent-subsidiary context); *cf. Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747–48 (applying "integrated enterprise" test to determine which parties were bound by a collective bargaining agreement). The employee satisfies this rule if he shows participation by the defendant that is " 'sufficient and necessary to the total employment process [of the employer], even absent total control or ultimate authority over hiring decisions.' " *Cook*, 69 F.3d at 1241 (quoting *Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir.1983)). A crucial element of the inquiry focuses on whether the two enterprises exhibit "centralized control of labor relations," including tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions. *Id.*

To meet this standard, Parker offered numerous documents, including disability forms and payroll authorizations, listing CPI as his employer. Parker also produced pay stubs that list his earnings as being "paid on behalf of Columbia Pictures Industries" through "SPE Corporate Services, Inc." At the summary judgment stage, we consider these documents sufficient to raise a genuine question of fact. Although CPI points to testimony indicating that the two companies' Human Resources departments were separate, which reasonably might suggest that CPI was not an integrated enterprise with SPE, this testimony merely strengthens rather than forecloses the conclusion that factual issues remain for trial. From the documents Parker proffered, a reasonable jury could conclude that CPI exercised sufficient control over the terms and conditions of his employment to qualify as his "employer" for purposes of a discrimination claim. We therefore find that summary

---

7. Although denial of summary judgment generally is not appealable, *see, e.g., Chaput v. Unisys Corp.*, 964 F.2d 1299, 1301 (2d Cir. 1992), the district court entered a final judgment in this case on January 12, 1995, disposing of all claims. CPI cross-appeals from that judgment. *See* 28 U.S.C. § 1291 (1992) (pro-

viding appellate jurisdiction for appeals from any final judgment). The district court's judgment was favorable to the appellees, including CPI, but our reversal revives the action against the appellees and renders CPI's cross-appeal viable.

342

judgment in favor of CPI was inappropriate.

**CONCLUSION**

For the foregoing reasons, we vacate the district court's grant of summary judgment in favor of SPE on Parker's claims of disability discrimination, affirm its denial of summary judgment to CPI on these claims, and remand these issues for further proceedings. We affirm the court's denial of Parker's motion for leave to amend his complaint.

WINTER, Chief Judge, dissenting:

Respectfully, I disagree with my colleagues as to whether Parker established a prima facie case of discriminatory discharge under the ADA. I therefore dissent.

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, a plaintiff must show, among other things, however, an ability to perform the essential functions of the job with or without reasonable accommodation. *See Heyman v. Queens Village Comm.,* 198 F.3d 68, 72 (2d Cir. 1999); *Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 6 (2d Cir.1999); *Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 149–50 (2d Cir.1998); 42 U.S.C. § 12111(8).

"[T]he plaintiff bears the burden of production and persuasion on the issue of whether [ ]he is otherwise qualified for the job in question." *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 137 (2d Cir. 1995). As to the requirement that an accommodation be reasonable, a plaintiff "bears only a burden of production .... [which] is not a heavy [burden]." *Id.* at 138 (citation omitted). Reasonable accommodation, however, "does not mean elimination of any of the job's essential functions." *Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir.1991) (Rehabilitation Act case).

Rather, "the concept of reasonable accommodation permits the employer to expect the same level of performance from individuals with disabilities as it expects from the rest of its workforce." *Borkowski,* 63 F.3d at 138 n. 3 (citing H.R.Rep. No. 485, 101st Congress, 2d Sess., pt. 2, at 55–56, *reprinted in* 1990 U.S.C.A.A.N. at 337–38). Significantly, we have stated that an employer is not "required to grant [an employee] an indefinite leave of absence." *See Mitchell,* 190 F.3d at 9 (citing *Walton v. Mental Health Ass'n,* 168 F.3d 661, 671 (3d Cir.1999); *Nowak v. St. Rita High Sch.,* 142 F.3d 999, 1004 (7th Cir.1998)).

My colleagues conclude that summary judgment was inappropriate because a genuine issue of material fact exists "as to whether, with the temporary accommodation of part-time work, [Parker] was capable of performing the essential functions of his job at SPE." I disagree.

In my view, the record is clear that when Parker's employment was terminated, he was not capable of performing any work, or at least that SPE reasonably believed him to be incapacitated. The doctor's reports, Parker's statements on disability applications, the failure to get clearance from his doctor to return part-time, and his own testimony are all consistent on this point. The doctor's report of July 27, 1995 stated "no work." An August 23, 1995 "update" also stated "no work." The next day, the doctor stated simply that his condition was "unchanged," a conclusion thereafter repeated on all pertinent occasions. Even though a medical condition and availability to work are different things, when a medical condition renders an employee totally incapacitated, a reported lack of any change in that condition must be regarded by an employer as continued incapacity.

Moreover, Parker's statements on his disability applications indicated that he could not perform his job and are consistent with the doctor's reports. Even if these statements do not bar his claim as a

---

matter of law if explained by other evidence, there is no such other evidence.

SPE had a policy that required employees who had been absent from work for medical reasons to provide clearance from their doctors before returning to work. This is a policy that is as protective of workers as of employers. The policy required a doctor's note for absences of more than five consecutive workdays. Each note was to include an expected date of return. If an employee was unable to return on the expected date, a new note was to be submitted before that date. Parker never submitted a note from a doctor clearing his return to work on any particular date or on any basis, an omission, again, consistent only with "no work." Given SPE's written policy, it was not SPE's burden to contact Parker's doctor to ask for clearance or to cross-examine her on the meaning of "condition unchanged," a conclusion she repeated after Parker had proposed a return to part-time work.

Indeed, there can be no claim in this case that Parker was cleared by his doctor for a return to part-time work at SPE. In his deposition, immediately after describing the August 1995 conversation with Bill Theis concerning such a return, Parker testified:

> Q. In the later part of August, when you had this conversation with Bill Theis, had your doctors approved your returning to work?
>
> A. Not at that point, no.

Moreover, Parker did not testify that he was cleared to work in any of the four succeeding months. Indeed, by his own testimony, he was not cleared to work until January 1996, months after his termination.

I believe that an employer may lawfully require an employee who misses work because of an incapacity to perform a job to provide medical clearance before returning to that job, or to a job modified by a reasonable accommodation. I see nothing in the ADA that prevents an employer from imposing such a requirement and from terminating an employee who does not provide such written clearance even if the employee has suggested an accommodation. Indeed, how else is an employer to evaluate whether an accommodation is needed or whether a request for a particular accommodation is reasonable.[1]

I therefore dissent.

---

1. In my view, work on a part-time basis cannot be a "reasonable accommodation" where some of the essential functions of the job must be performed by others, as would usually be the case. My colleagues do not reach this issue, and I will leave it at that.