07-5689-cv
McBride v. BIC Consumer Products Manufacturing Company, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2008

Argued: March 9, 2009            Decided: October 5, 2009

Docket No. 07-5689-cv

_____

SANDRA MCBRIDE,

*Plaintiff-Appellant*,

-v.-

BIC CONSUMER PRODUCTS MANUFACTURING COMPANY, INC.,[*]

*Defendant-Appellee*.

_____

Before:       WALKER, LIVINGSTON, *Circuit Judges*, KAPLAN,[**] *District Judge*.

Plaintiff-Appellant Sandra McBride appeals from a decision of the United States District

Court for the District of Connecticut (Underhill, J.) granting the motion of Defendant-Appellee BIC

Consumer Products Manufacturing Company, Inc. for summary judgment. McBride contends on

appeal that the district court erred in concluding that she had failed to make a prima facie showing

---

[*] The Clerk of the Court is directed to amend the official caption as set forth above.

[**] The Honorable Lewis A. Kaplan, United States District Court for the Southern District of New York, sitting by designation.

of disability discrimination through failure to accommodate her disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* We conclude that McBride failed to make such a showing as she provided no evidence that, with aid of a reasonable accommodation, she was qualified for either her pre-disability position or a suitable vacant position to which she could have been reassigned. Moreover, we hold that, in the absence of such evidence, an employer's failure to engage in an interactive process intended to discover an accommodation suitable to both parties is immaterial.

Affirmed.

W. MARTYN PHILPOT, JR., Law Office of W. Martyn Philpot, Jr., LLC, New Haven, Connecticut, *for Plaintiff-Appellant*.

MICHAEL J. SOLTIS, Jackson Lewis LLP, Stamford, Connecticut, *for Defendant-Appellee*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Plaintiff-Appellant Sandra McBride appeals from a decision of the United States District Court for the District of Connecticut (Underhill, J.) granting the motion of Defendant-Appellee BIC Consumer Products Manufacturing Company, Inc. ("BIC") for summary judgment. McBride's complaint alleged that BIC violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, by terminating her employment rather than reasonably accommodating her disability. The district court rejected McBride's sole claim on the ground that she had entirely failed to identify any accommodation that BIC could have pursued to allow McBride to continue in her current position or any vacant position for which McBride was qualified. We affirm for the same reason, regardless of whether BIC engaged in a sufficient interactive process at the time of McBride's

2

termination.

**BACKGROUND**

BIC produces writing instruments, shavers, and lighters. In the course of the manufacture of these products, BIC uses a variety of materials with regard to which it must have on file a material safety data sheet on the ground that they present either a physical or health hazard. *See* 29 C.F.R. § 1910.1200(g)(1) (requiring employers to "have a material safety data sheet in the workplace for each hazardous chemical which they use"); *id.* § 1910.1200(c) (defining the term "hazardous chemical" to mean "any chemical which is a physical hazard or a health hazard"). Fumes from some of these materials are present in the manufacturing areas of BIC's facility.

As of June 2001, McBride, an employee of BIC since 1974, was working as a utility operator in the cartridge assembly area of BIC's ink systems department. Her work in this position involved exposure to various chemical fumes. At that time, McBride reported to BIC that she had become ill, suffering from a respiratory ailment as well as panic and anxiety attacks. She accordingly began treatment under the care of a variety of medical and psychiatric practitioners, who recommended that she be placed on medical leave. Shortly thereafter, McBride took such a leave of absence, as allowed by her employment contract, for a period of up to twelve months. While McBride was on leave, BIC received periodic updates on her condition from her treating psychiatrist, Dr. James Ciarcia. On May 9, 2002, Dr. Ciarcia cleared McBride to return to work, following which McBride contacted BIC about the possibility of resuming her employment. In connection with this request, BIC received instructions from Dr. Ciarcia regarding restrictions that should be placed on the conditions of her

3

employment.[1] These restrictions included, among others, "complete avoidance of chemical, solvent or ink fumes, as well as any other hydrocarbon fumes," and avoidance of "any inappropriate hassles or threatening confrontations."

On June 5, 2002, McBride met with a BIC supervisor after having been examined by a doctor in BIC's employ. During this meeting, the supervisor offered to provide McBride with a respirator that would deliver breathable air in order to accommodate Dr. Ciarcia's avoidance-of-fumes requirement. McBride, however, rejected this offer. Neither party appears to have discussed any additional potential accommodations. At the conclusion of the meeting, the BIC supervisor instructed McBride not to report for work the next day. Roughly one month later, following the expiration of the twelve-month period during which McBride was contractually entitled to remain on medical leave, she received notice that BIC was terminating her employment on the grounds that she had refused to accept BIC's proposed accommodation of her disability and failed to propose any alternative accommodation that would allow her to return to work.

McBride subsequently filed this action in the United States District Court for the District of Connecticut, asserting, as described above, a claim for failure to accommodate under the ADA.[2] In

_____

[1] We recognize that Dr. Ciarcia initially "cleared [McBride] to return to work full time without restrictions." The parties do not dispute, however, that he subsequently outlined restrictions upon the conditions in which he believed McBride could safely work. Moreover, McBride does not contend on appeal that she was able to perform the essential functions of her prior position without any accommodation.

[2] McBride's initial complaint also alleged disparate treatment based on race and retaliation, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as disability discrimination in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. An amended complaint, however, abandoned all claims other than the ADA claim at issue here.

the course of discovery, BIC revealed that a variety of its positions of employment were vacant at or around the time of McBride's termination. Reassignment to many of these positions, however, would have involved a promotion from McBride's current position. Moreover, nearly all of the remaining jobs required extensive experience in the relevant field of work, proficiency in the use of various business software packages, and, in many cases, a college degree. Of particular relevance, each of the several available secretarial positions required at least three years of secretarial experience. Finally, although a vacant quality assurance technician position did not require substantial related experience and reassignment thereto would not have involved a promotion, performance of the duties of that position would have required McBride to spend time in BIC's manufacturing areas, where she would be exposed to chemical fumes.

Ultimately, the district court granted a motion for summary judgment filed by BIC and entered judgment against McBride on the basis that she had failed to raise a genuine issue of material fact as to whether there was an accommodation of her disability that BIC could have pursued to allow her to continue her employment. This appeal followed.

## DISCUSSION

We review a district court's grant of summary judgment de novo. *See Pilgrim v. Luther*, 571 F.3d 201, 204 (2d Cir. 2009). Summary judgment is warranted only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Mathirampuzha v. Potter*, 548 F.3d 70,

74 (2d Cir. 2008).

As a preliminary matter, the district court concluded that McBride should be deemed to have admitted a variety of facts described in a request for admission submitted by BIC on the basis that she had failed to respond to the request in a timely fashion and that withdrawal of such admissions would prejudice BIC. *Cf.* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."). McBride failed to raise any challenge to this ruling in her primary brief. Although she briefly mentioned the district court's determination in her reply brief, we ordinarily will not consider issues raised for the first time in a reply brief. *See JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005). McBride, moreover, did not genuinely challenge the district court's decision, asserting instead merely (and somewhat confusingly) that it is inappropriate for BIC to rely upon any of the purported admissions on appeal in light of the district court's simultaneous conclusion that it would have granted summary judgment even in their absence. That being said, we, like the district court, would reach the same conclusion regardless of the resolution of this matter. Accordingly, we need not address it further.

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to[, *inter alia*,] . . . discharge of employees." 42 U.S.C. § 12112(a); *see also Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sista*, 445 F.3d at

6

169. "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Id.*

Discrimination in violation of the ADA includes, *inter alia*, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. §12112(b)(5)(A); *see also Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). In addition, for the purposes of the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In light of this substantive standard, a plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate by showing each of the following:

> "(1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006) (quoting *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)) (internal quotation mark omitted). The parties do not dispute that McBride has made a sufficient showing that she was disabled at the time of her termination and that BIC was covered by the ADA and on notice of McBride's disability. Our inquiry therefore concerns only whether McBride made a sufficient showing that, with reasonable accommodation, she could perform the essential functions of the relevant job and that BIC failed to make the appropriate accommodations.

7

McBride manifestly failed to make such a showing. In the context of the ADA, reasonable accommodation may include, *inter alia*, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, "reassignment to a vacant position." 42 U.S.C. §12111(9)(B); *see also Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000). The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment, including the existence of a vacant position for which she is qualified.[3] *See Jackan*, 205 F.3d at 566-67; *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137-38 (2d Cir. 1995). McBride provided no evidence that there existed any potential accommodation that would have allowed her to continue to work, regardless of the form such an accommodation would have taken.

Putting aside for the moment the possibility of reassignment to a vacant position, McBride entirely failed to present any evidence of an accommodation that would have allowed her to perform the essential functions of her pre-disability position. At her June 5, 2002 meeting with a representative of BIC, she suggested no potential accommodations that BIC could pursue and rejected the potential accommodation, use of a respirator, that was proposed by BIC. Even after substantial opportunity for discovery in the course of this action, McBride did not identify either to the district court or to this Court any potential accommodation. Indeed, both at the hearing before

---

[3] By contrast, with regard to the reasonableness of a proposed accommodation, a plaintiff bears only a light burden of production that is satisfied if the costs of the accommodation do not on their face obviously exceed the benefits. The burden of persuasion falls on the defendant employer. *See Jackan*, 205 F.3d at 566; *Borkowski*, 63 F.3d at 138.

the district court on BIC's motion for summary judgment and at oral argument in this appeal, she conceded that she was unaware of any such accommodation. Her claim, then, necessarily rests on the availability of reassignment.

McBride, however, has also failed to identify a suitable position to which she could have been transferred. An ADA plaintiff does not satisfy her burden to identify a potential accommodation merely by reciting the formula that her employer could have reassigned her. Instead, she must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned. *See Jackan*, 205 F.3d at 566-67; *see also Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 104 (2d Cir. 2003) ("[T]he position sought must be vacant within a reasonable amount of time." (citing 29 C.F.R. pt. 1630, app. o)); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999) ("[A]n employer need not reassign an employee if no position is vacant. Nor is the employer obliged to create a new position to accommodate the employee." (citation omitted)).

Additionally, the identified position must be one for which she was qualified. *See Norville*, 196 F.3d at 99. An employee is qualified for a position only if she can perform its essential functions. *See Rodal*, 369 F.3d at 120; *Jackan*, 205 F.3d at 565-66; *Norville*, 196 F.3d at 98; *see also* 42 U.S.C. § 12111(8). Although the term "essential functions" is not defined by the ADA, regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") indicate that it encompasses "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1); *see also Rodal*, 369 F.3d at 120. Evidence of whether a particular job duty constitutes an essential function includes, *inter alia*, "the employer's judgment as to what functions of a job are essential"

9

and "a written description [prepared by the employer] before advertising and interviewing applicants." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(n)(3). Indeed, a court must give substantial deference to an employer's judgment as to whether a function is essential to the proper performance of a job. *See Rodal*, 369 F.3d at 120; *Shannon*, 332 F.3d at 100. EEOC regulations further indicate that, to be qualified for a position, a plaintiff must in addition "satisf[y] the requisite skill, experience, education and other job-related requirements of the employment position." 29 C.F.R. § 1630.2(m); *see also Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006) (noting that, in order to establish that she is qualified for a particular position, an ADA plaintiff must show, *inter alia*, that she "possesses the requisite skill, experience, education and other job-related requirements for the position"); *Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1016 (8th Cir. 2000) (noting that the determination of whether an employee is qualified for a particular position involves, *inter alia*, inquiry into "whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like"); *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998) ("The critical factor is the match between the employee's knowledge, skills, and abilities, and the legitimate requirements for other positions with the employer . . . ."). Finally, the identified position cannot be such that reassignment to it would have involved a promotion.[4] *See Office of the Architect of the Capitol v. Office of Compliance*, 361 F.3d 633, 640

---

[4] The implication of this rule is merely that an employer does not have an obligation to promote an employee in order to accommodate a disability that renders her unable to perform the essential functions of her current job. It is important, however, to distinguish a case in which the plaintiff alleges that, because of her disability, she was denied a promotion to which she was entitled. In that instance, a plaintiff may very well have a valid ADA claim. *See, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208 (2d Cir. 2001).

(Fed. Cir. 2004); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001); *Cravens*, 214 F.3d at 1019; *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1176-77 (10th Cir. 1999) (en banc); *Malabarba v. Chi. Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998); *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998); *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir. 1996); *see also* 29 C.F.R. pt. 1630, app. o ("[A]n employer is not required to promote an individual with a disability as an accommodation.").

McBride has presented no evidence that, at or about the time of her termination, there existed a vacant position at BIC for which she was qualified and reassignment to which would not have involved her promotion. The record indicates that reassignment to most of the jobs that were vacant at the time of McBride's termination would have required BIC to promote McBride. In addition, BIC's descriptions of the vast majority of vacant positions indicate that they required extensive applicable professional experience, proficiency with a variety of business software packages, and, in many cases, a college degree. McBride has provided no evidence challenging the conclusion that reassignment to such positions would have amounted to a promotion or indicating either that BIC's job descriptions do not adequately describe the essential functions of and requisite qualifications for the identified positions or that she possessed the requisite educational background or professional skills and experience. Neither her conclusory assertion in an affidavit that she was qualified for the then-available positions nor her counsel's unsubstantiated statements before the district court remedy this defect. Moreover, McBride's initial application for employment at BIC, while admittedly many years old, suggests that she does not possess the necessary qualifications for the positions bearing these characteristics. These positions, then, cannot qualify as positions to which McBride could have

11

been reassigned as an accommodation for her disability.

Indeed, McBride appears to recognize as much in her argument before this Court, as she focuses here entirely on the three positions of quality assurance specialist, secretary, and receptionist, rather than the broad swathe of vacant positions identified through discovery. Despite McBride's protests, however, none of these positions qualifies as a vacant position to which she should have been reassigned as an accommodation of her disability. The uncontroverted evidence establishes that the Quality Assurance Technician position, like McBride's pre-disability position, required the employee to be physically present in the manufacturing areas of BIC's facility where she would have been exposed to chemical fumes, a condition which would have been incompatible with McBride's disability and presumably, in light of McBride's representations regarding non-reassignment accommodations, could not have been ameliorated. All of the vacant secretarial positions required extensive secretarial experience and familiarity with a variety of business software, which, as already noted, there is no evidence that McBride possessed. Finally, there is no indication in the record that there were any vacant receptionist positions at or about the time of McBride's dismissal.

McBride argues that her failure to identify an accommodation of any form that would have allowed her to continue employment at BIC should be excused in light of BIC's purported failure to engage in a sufficient interactive process intended to develop a mutually agreeable accommodation of her disability. Even assuming, without deciding, that BIC did fail to engage in such a process, this contention is meritless. Admittedly, "[t]he ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan*, 205 F.3d at 566; *see also* 29 C.F.R. §

12

1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation."). That being said, the ADA imposes liability for, *inter alia*, discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end, no accommodation was possible. *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to[, *inter alia*,] . . . discharge of employees . . . ."); *id.* § 12112(b)(5)(A) (indicating that, in this context, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability "); *see also Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 194 (3d Cir. 2009) (noting that the ADA "only characterizes as unlawful discrimination an employer's failure to reasonably accommodate an 'otherwise qualified individual' when that accommodation does not impose an undue hardship" and "does not speak directly to the process employers should undertake in doing so"); *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) ("The ADA, as far as we are aware, is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made.").

Relying upon this rationale, each of our sister Circuits to have considered the issue has concluded that failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible.[5] *See Battle v. United Parcel Serv., Inc.*,

---

[5] We recognize that the Ninth Circuit, although appearing to agree that liability attaches as a result of failure to engage in a sufficient interactive process only "if a reasonable accommodation would have been possible," has also indicated that "an employer cannot prevail

13

438 F.3d 856, 864 (8th Cir. 2006) ("Under the ADA, if no reasonable accommodation is available, an employer is not liable for failing to engage in a good-faith interactive process."); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005) (noting that refusal to engage in an interactive process does not give rise to liability under the ADA if "no reasonable accommodation was possible" and that "if it is clear that no reasonable accommodation was available, we stop there"); *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999) ("[T]here is no per se liability under the ADA if an employer fails to engage in an interactive process. . . . [A]n employer will not be held liable under the ADA for failing to engage in an interactive process if no reasonable accommodation was possible . . . ."); *Smith*, 180 F.3d at 1174 ("Even if [the defendant employer] failed to fulfill its interactive obligations to help secure a reassignment position, [the plaintiff] will not be entitled to recovery unless he can also show that a reasonable accommodation was possible . . . ."); *Soto-Ocasio*

at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." *Barnett v. U.S. Air., Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *rev'd on other grounds*, 535 U.S. 391 (2002). A later decision of that court, however, interpreted *Barnett* as holding merely that "the task of proving the negative – that no reasonable accommodation was available – rests with an offending employer throughout the litigation, and that, given the difficulty of proving such a negative, it is not likely that an employer [who may not have engaged in good faith in the required interactive process] will be able to establish on summary judgment the absence of a disputed fact as to the existence of [a reasonable accommodation]." *See Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1256 n.7 (9th Cir. 2001), *overruled on other grounds by Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) (en banc); *cf. Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006) ("Because the [defendant employer] did not engage in any such [interactive] process, summary judgment is available only if a reasonable finder of fact *must* conclude that "there would in any event have been no reasonable accommodation available." (quoting *Morton*, 272 F.3d at 1256) (internal quotation marks omitted)). Moreover, as this Court, contrary to the Ninth Circuit, has concluded that the plaintiff in an ADA action bears the burden of demonstrating the existence of a potential accommodation, *see Jackan*, 205 F.3d at 566-68; *Borkowski*, 63 F.3d at 137-40, the difficulty of sufficiently proving a negative at summary judgment recognized in *Morton* is not relevant here.

*v. Fed. Express Corp.*, 150 F.3d 14, 19 (1st Cir. 1998) ("[P]laintiff's assertion that [defendant employer] failed to engage in 'meaningful' interaction with plaintiff regarding reasonable accommodation is of no moment – or, more precisely, it puts the cart well before the horse – because no reasonable trier of fact could have found, on this record, that [a reasonable accommodation was possible.]"); *Willis*, 108 F.3d at 285 ("[W]here a plaintiff cannot demonstrate reasonable accommodation, the employer's lack of investigation into reasonable accommodation is unimportant." (internal quotation marks omitted)); *cf. Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 233-35 (3d Cir. 2000) (Alito, J.) ("[I]n a failure-to-transfer case [under the Rehabilitation Act], if, after a full opportunity for discovery, the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant – even if it also appears that the defendant failed to engage in good faith in the interactive process."). Moreover, this Court has previously suggested as much. *See Jackan*, 205 F.3d at 568 n.4 ("The question whether an employer bears a legal duty to assist an employee in identifying appropriate vacant positions in the immediate aftermath of a request for reasonable accommodation is analytically distinct from the question of which party bears the burden of persuasion on the existence of a vacancy in litigation."). *But see Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 219 (2d Cir. 2001) (declining to determine "whether the refusal of [defendant employer] to enter into an interactive process alone would foreclose summary judgment" (internal quotation marks omitted)). Accordingly, we adopt the reasoning of our sister Circuits and hold that an employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA and evidence thereof does not allow a plaintiff to avoid

15

summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue.

It is certainly true that an employer, by failing to engage in a sufficient interactive process, risks not discovering a means by which an employee's disability could have been accommodated and thereby increases the chance that it will be found to have violated the ADA. *See Mengine v. Runyon*, 114 F.3d 415, 420-21 (3d Cir. 1997). It is even possible, although we need not decide the issue here, that a failure to engage in a sufficient interactive process where accommodation was, in fact, possible constitutes prima facie evidence of discrimination on the basis of disability. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *rev'd on other grounds*, 535 U.S. 391 (2002); *Cravens*, 214 F.3d at 1020-21; *Fjellestad*, 188 F.3d at 952; *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317-20 (3d Cir. 1999). The employer's failure to engage in such an interactive process, however, does not relieve a plaintiff of her burden of demonstrating, following discovery, that some accommodation of her disability was possible.

Our earlier decisions in *Parker v. Columbia Pictures Industries*, 204 F.3d 326 (2d Cir. 2000), and *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d Cir. 2008) are not to the contrary. In *Parker*, this Court indicated that an employer's failure to make any accommodation for a disabled employee and its refusal even to consider potential accommodations proposed by the employee (i.e., refusal to engage in the interactive process contemplated by the ADA) could give rise to an inference that the employer took adverse employment action against the employee because of her disability. *See* 204 F.3d at 338. At the same time, however, it indicated that discriminatory intent was merely one element of a prima facie case for a claim under the ADA, that an ADA plaintiff is independently

16

required to make a showing that she is, at least with reasonable accommodation, qualified for her current position (or some equivalent position to which she could be reassigned), and that the plaintiff in *Parker* had done so. *See id.* at 332-36. *Parker*, then, merely stands for the entirely ordinary proposition that an employer's failure to make a reasonable accommodation, particularly when coupled with a refusal to engage in a sufficient interactive process, makes out a prima facie case of disability discrimination where the plaintiff has also made a sufficient showing that, *inter alia*, she is qualified for the position at issue.

*Brady* is similarly inapposite. The *Brady* Court concluded in pertinent part that, under certain circumstances, an employer is required to act proactively to accommodate the disability of an employee even if the employee does not request accommodation. *See* 531 F.3d at 135. In the course of its analysis, it admittedly indicated that, in the absence of a request for specific accommodation, an employer should engage in an interactive process to discover an accommodation workable to both parties and that the defendant employer's failure to do so was sufficient, under the circumstances of that case, to support a verdict in favor of the plaintiff on a failure-to-accommodate claim. *See id.* at 135-36. Moreover, it noted, but did not further discuss, the defendant employer's contention that the plaintiff had failed to "demonstrate the existence of an accommodation that would have enabled him to perform his job." *Id.* at 135. The *Brady* Court's description of the relevant factual background, however, strongly suggests that some accommodation was possible. *See id.* at 131 (noting that a supervisor had admitted that "new employees were typically given a training period and that [plaintiff] should have been given more time to learn the job"). The *Brady* Court, moreover, also upheld against a sufficiency challenge another claim for disability discrimination, a claim which it

17

acknowledged required the plaintiff to show "that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation." *Id.* at 134. Accordingly, the analysis in *Brady* was premised on the fact that the plaintiff had sufficiently demonstrated that he was, at least with the aid of some reasonable accommodation, capable of performing the essential functions of the position at issue. *Brady*, like *Parker*, therefore indicates only that refusal to accommodate and to engage in a sufficient interactive process may support a claim under the ADA where the plaintiff is, at least with the aid of a reasonable accommodation, qualified for the position at issue.

Finally, McBride contends that her claim for failure to accommodate may be supported by BIC's purported preferential treatment of other disabled employees and false assurances to McBride that she would continue to be employed. Even if we assume, without deciding, that evidence relating to such purported facts would be relevant to the question of whether BIC acted with a discriminatory intent, it is immaterial here, where McBride has failed to make a sufficient showing that she is capable of performing the essential functions of either her pre-disability position or some other position to which she could have been reassigned.

## CONCLUSION

We have considered all of McBride's remaining contentions on this appeal and have found them to be without merit. Pursuant to the reasoning described herein, we conclude that she has failed to make a prima facie showing of disability discrimination in violation of the ADA. For this reason, the judgment of the District Court is **AFFIRMED**.

18