*Tassy v. Buttigieg*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2021

(Argued: May 26, 2022          Decided: October 20, 2022)

No. 21-1425

_____

JEAN-CLAUDE TASSY

*Plaintiff-Appellant,*

-v.-

PETE BUTTIGIEG, SECRETARY OF TRANSPORTATION

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Eastern District of New York
_____

Before:     LIVINGSTON, *Chief Judge*, POOLER, and SACK, *Circuit Judges*.

Plaintiff-Appellant Jean-Claude Tassy appeals the dismissal of his Title VII discrete act and hostile work environment claims against the Federal Aviation Administration on summary judgment by the United States District Court for the Eastern District of New York (Cogan, *J.*).   *See Tassy v. Buttigieg*, 540 F. Supp. 3d 228 (E.D.N.Y. 2021).   We conclude that Tassy's claims were properly dismissed.

1

First, Tassy's failure-to-train claim is time-barred by the applicable statute of limitations, which requires that a claimant initiate administrative review of his employment discrimination claim within 45 days of the allegedly discriminatory conduct. *See Fitzgerald v. Henderson*, 251 F.3d 345, 358–59 (2d Cir. 2001). Tassy fails to point to any particular discrete and actionable unlawful employment practice that occurred in the 45 days before he initiated administrative review of his claims. The continuing violation doctrine does not allow Tassy to pursue alleged incidents of unlawful practices that occurred before the 45-day period, as the doctrine is inapplicable to discrete act claims. Second, as to Tassy's hostile work environment claim, Tassy failed to establish a prima facie case that his employer's alleged failure to train him or the other alleged incidents of hostile behavior in the workplace were motivated by hostility to his race, color, or national origin. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). Accordingly, the judgment of district court is **AFFIRMED**.

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | PAUL SHOEMAKER, Greenfield Stein & Senior, LLP, New York, NY. |
| FOR DEFENDANT-APPELLEE: | EKTA DHARIA, Varuni Nelson (on the brief), *on behalf of* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY. |

DEBRA ANN LIVINGSTON, *Chief Judge*:

In the summer of 2015, plaintiff-appellant Jean-Claude Tassy, then a technical operator at John F. Kennedy International Airport, began his training to become an Aviation Safety Inspector ("ASI") for the Federal Aviation Administration ("FAA"). As an "ASI-in-training," Tassy had to complete three levels of on-the-job training. Tassy quickly completed the first two levels, involving classroom instruction and observation in the field, respectively. But

2

the third level, which required the trainee to complete certain tasks himself, proved to be an obstacle: A year-and-a-half in, Tassy had completed only 30 percent of the Level 3 training. After two-and-a-half years of training, he remained at 35 percent. According to Tassy, his failure to make progress in his ASI training was because he was intentionally excluded from training opportunities on account of his race.

After filing an unsuccessful complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that the FAA failed to train Tassy and subjected him to a hostile work environment because of his race, color, and national origin, Tassy filed suit against defendant-appellee the Secretary of the Department of Transportation ("DOT") in the Eastern District of New York. He argued that the FAA, a component of the DOT, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because it discriminated against Tassy on the basis of his race, color, and national origin. Following discovery, the district court granted summary judgment to the defendant-appellee on Tassy's claims, holding that Tassy's failure-to-train claim was time-barred and his hostile work environment claim failed on the merits. We agree with the district court's decision, and therefore **AFFIRM**.

3

## BACKGROUND

### I.        Factual Background[1]

Plaintiff-Appellant Jean-Claude Tassy is a Black man of Haitian origin.   In 2012, he began working for the FAA as a technical operator at John F. Kennedy International Airport.   Tassy long aspired to be an FAA ASI, a position that involves administering and enforcing safety regulations and standards for aircraft. At some point, he began considering applying for a position as an ASI.

The FAA had open positions at the Flight Standards District Office in Farmingdale, New York (the "Farmingdale FSDO") to train employees for ASI positions.   Prior to applying for a position, Tassy contacted Erik Anderson, a manager at the Farmingdale FSDO who, like Tassy, is Black.   Anderson encouraged Tassy to apply for an ASI position at the Farmingdale FSDO.   But Tassy asserts that Anderson also gave him a warning:   "Before you get to the office be careful," he said while pointing to the exposed skin on his arm.   App'x 31–32.   In the same conversation, according to Tassy, Anderson "specifically

---

[1]  In reviewing the grant of summary judgment, we construe the "evidence in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor."   *See Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 113 (2d Cir. 2011) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)).

mentioned a white female employee who worked at the front desk [at the Farmingdale FSDO] and cautioned [Tassy] to be very careful in [his] dealings with her." App'x 473. Because Anderson is Black, Tassy understood these warnings to mean that "color is [an] issue" at the Farmingdale FSDO. App'x 32. Despite Anderson's warnings, Tassy decided to apply and became an "ASI-in-training" at the Farmingdale FSDO in 2015.

Once in his new role, Tassy needed to finish three levels of on-the-job training to complete his ASI training program. Tassy quickly passed Level 1 (written and classroom instruction) and Level 2 (observation of inspectors in the field). But Tassy got stuck at Level 3, which required that he "demonstrate[] competence" by performing the work himself while a trainer observed and evaluated his performance. App'x 511. After his first 18 months on Level 3, Tassy had completed only 30 percent of that level's training.

At the Farmingdale FSDO, ASIs-in-training are expected to coordinate with current ASIs to satisfy their Level 3 training. At a May 2017 quarterly review attended by Tassy's supervisor, Miguel Soto, and other FAA employees, Soto told Tassy that "he needed to coordinate with other trainers and inspectors to complete more on-the-job tasks" and that he expected Tassy to complete 60 percent of his

required Level 3 training by the end of the next quarter. App'x 513; *see also* App'x 321–22.

However, Tassy did not reach that goal; he completed only 35 percent by the end of the next quarter. At a September 2017 quarterly review, Soto again told Tassy that "he needed to coordinate with other trainers [and] inspectors to get more on-the-job tasks completed." App'x 515; *see also* App'x 324–25. Tassy complained to Soto that "no one takes him out" for training. App'x 325. In response, Soto "reminded" Tassy that it was "his responsibility to make progress" toward completing his training. App'x 325. Tassy's superiors again set a goal of 60 percent by the end of the next quarter. But Tassy's performance did not improve after his second quarterly review. *See* App'x 340.

In April 2018, more than two-and-a-half years into his tenure as an ASI-in-training at the Farmingdale FSDO, Tassy had still completed only 35 percent of his Level 3 training. Soto met with Tassy again. After this meeting, Soto sent Tassy a memorandum "to ensure that [Tassy] underst[ood] [his] concerns with [Tassy's] job performance." App'x 345; *see also* App'x 517. One of those concerns was that Tassy "refus[ed] to go out in the field with senior inspectors when invited." App'x 345. Soto also reiterated his concern that after 30 months on the job,

Tassy's Level 3 training was "only 35% complete." *Id.* And Soto noted that Tassy could not "perform" the "functions" his role "required." *Id.* The situation never improved. Although Tassy worked at the Farmingdale FSDO for another two years, he never completed his training.

The FAA and Tassy dispute the cause of his failure to meet his training benchmarks. The FAA maintains that "Tassy's own sustained, documented performance issues . . . caused his lack of training." Appellee's Br. at 17. But according to Tassy, he did not complete his ASI training because various FSDO supervisors and employees denied him training opportunities on account of his race, color, and national origin. In support of his claims, Tassy points to numerous examples of what he characterizes as inadequate training supervision.[2]

Raymond Melcer, who trained Tassy on only one occasion, was Tassy's first trainer at the Farmingdale FSDO. According to some, Melcer was "known to be kind of a gruff individual, but that [was] his personality with all people." App'x 284. Tassy alleges that Melcer was particularly "rough" on him. App'x 472. Tassy also claims that Melcer harassed him in the office outside of training, once

---

[2] The FAA does not typically assign specific trainers to work with ASIs in training, but it made an exception given Tassy's struggles to obtain adequate training.

berating him for using two monitors unlike other employees: "Why the f\*\*\* do you f\*\*\*ing need two f\*\*\*ing [monitors] in this f\*\*\*ing computer." App'x 534. Tassy also recalled an instance where Melcer "went crazy on" and berated a white employee, repeatedly and loudly "sa[ying] F words" to him. App'x 41, 43.

After Melcer retired, the FAA assigned a new trainer to Tassy, Joseph Rachiele. Rachiele trained Tassy several times. Rachiele was also allegedly a "rough" and a "loud" person. App'x 544. Tassy recalled that, when he did not pass certain tests that were required for him to complete his training, Rachiele said "[y]ou failed" and repeated the word "failed" several times in a "[v]ery loud voice." App'x 543 (alteration in original, internal quotation marks omitted). Yet Rachiele also expressed compassion for Tassy's wellbeing. He once asked Tassy if he was okay because Rachiele thought he "look[ed] [un]well." App'x 541. When Tassy responded that he found the job "stressful," Rachiele expressed sympathy. *Id.* Rachiele suggested that Tassy might return to his previous job or retire because Rachiele feared that "this job is doing a lot of damage to [him]." App'x 542. Rachiele then hugged Tassy and said "God bless" and "I love you." *Id.*

8

At some point, the FAA assigned a third trainer to Tassy, Jeff Rose. Rose never berated Tassy, used offensive language, or commented on his race, color, or national origin, but he rarely trained Tassy. On two occasions, Tassy asked Rose to take him for training and Rose agreed, but did not take him out. In total, according to Tassy, Rose took him out for training on "five or fewer occasions." App'x 521. Tassy alleges, however, that Rose took a white employee out for training on several occasions. App'x 527.

Not all experiences were bad, however. Tassy was able to receive "several" trainings from Conrad DePinto, an ASI at the Farmingdale FSDO. App'x 522. Tassy described DePinto as the "only guy who treat[ed] [him] with respect as a . . . decent human being." App'x 92. Additionally, Mark Burnett, another ASI at the Farmingdale FSDO, trained Tassy on at least one occasion, without apparent incident.

Aside from lack of training, Tassy claims that he faced other types of hostility in the office while employed at the Farmingdale FSDO. First, Tassy alleges that several employees never greeted or even acknowledged him in the morning, but would say "good morning" to his co-workers. Second, when an inspector named Shaukat Alvi asked Tassy whether he had completed an

assignment and Tassy responded he had not, Alvi allegedly "grabbed [a] folder" from Tassy and said he would "never f***ing come to [Tassy's] cubicle again" and "stormed away." App'x 174. According to Tassy, Alvi also "falsely reported" that Tassy had used profanity in the office. App'x 571. Third, Tassy alleges that a co-worker once made a gesture toward Tassy that he understood to mean that she thought he smelled bad. App'x 111. And finally, on one occasion, when a group of co-workers walked by Tassy's cubicle, one allegedly disparaged a Haitian painting Tassy had hung up nearby, stating "[l]ook at the piece of crap art on that wall." App'x 181.

## II.     Procedural History

Tassy first contacted an Equal Employment Opportunity ("EEO") counselor at the FAA on August 18, 2018. After EEO counseling failed to resolve Tassy's concerns, he filed a complaint with the EEOC on January 8, 2019, making eight claims of discrimination and harassment based on his race, color, and national origin.

The DOT conducted a formal investigation into Tassy's claims from July to August 2019. The agency's formal decision, issued on February 18, 2020, found no discrimination or workplace harassment, and concluded that six of Tassy's

claims were time-barred because Tassy could not identify any particular incidents that occurred within the 45 days prior to his contacting the EEO counselor.

On March 3, 2020, the FAA issued Tassy a "Notice of Proposed Removal" for "misconduct during the course of his employment at the FAA Farmingdale FSDO." App'x 503. The notice purportedly stemmed from the FAA's discovery that Tassy was secretly "record[ing] workplace conversations without the consent or permission of those he recorded, in violation of FAA policy." App'x 503. Tassy asserts that the notice was issued in retaliation for his filing of the EEO complaint. Regardless, before the FAA imposed any discipline upon Tassy, he voluntarily retired. Tassy then returned to the EEO counselor, claiming that the FAA issued the notice in retaliation for the filing of his initial EEO complaint. Again, after EEO counseling failed to resolve this issue, Tassy filed a second EEO complaint on July 16, 2020. Like his first complaint, this second complaint also ended in an unfavorable agency decision.

With both of his EEO complaints dismissed by agency decisions, Tassy sued defendant-appellee the Secretary of the Department of Transportation in the Eastern District of New York.[3] In his complaint, Tassy alleges that he suffered

---

[3] At the time Tassy's complaints were originally filed, he sued Elaine Chao, who

11

disparate treatment from his supervisors and co-workers at the Farmingdale FSDO. Specifically, he claims that the FAA failed to train him and subjected him to a hostile work environment on account of his race, color, and national origin.[4]

The Secretary of Transportation moved for summary judgment, arguing, *inter alia*, that (1) Tassy's discrimination claim arising from his allegations of a failure to train was barred by the statute of limitations, and (2) that his hostile work environment claim failed because he could not establish a *prima facie* case under Title VII.

The district court granted the Secretary of Transportation's motion for summary judgment and dismissed Tassy's claims. *Tassy*, 540 F. Supp. 3d at 232. The district court first held that Tassy's claim based specifically on his allegations of a failure to train was time-barred by the applicable statute of limitations. *Id.* at 235. Noting that EEOC regulations require that an employee contact an EEO

---

was then the Secretary of Transportation. Elaine Chao has since been substituted for Pete Buttigieg, the current Secretary of Transportation.

[4] Tassy also brought a second complaint in federal court, claiming retaliation and constructive discharge based on his allegation that the FAA issued the Notice of Proposed Removal in retaliation for his decision to file a complaint with the Department of Transportation's EEO. The district court denied the Secretary of Transportation's motion to dismiss this claim. *See Tassy*, 540 F. Supp. 3d at 232. This issue is not before us on appeal.

counselor within 45 days of an allegedly discriminatory act, the court concluded that because Tassy contacted the EEO counselor on August 18, 2018, any discrete discriminatory act must have occurred on or after July 4, 2018 to be actionable. *Id.* The court determined that Tassy had failed to identify any particular discrete and actionable unlawful employment action that occurred within that limitations period. *Id.* The district court also held that, because Tassy's failure-to-train allegations constituted a claim challenging a discrete act—as opposed to a hostile work environment—the continuing violation doctrine did not apply. *Id.*

Next, the district court ruled that the Secretary of Transportation was entitled to summary judgment on Tassy's hostile work environment claim because any allegedly wrongful conduct was not sufficiently severe or pervasive to meet Title VII's standards. *Id.* at 236–37. The claim separately failed because Tassy could not show that the allegedly wrongful conduct was on account of his protected characteristics, *i.e.*, his race, color, or national origin. *Id.* at 237. This appeal followed.

## DISCUSSION

Tassy appeals the district court's summary judgment dismissal of his complaint alleging that he was subject to a discriminatory failure to train and a

13

hostile work environment on the basis of his race, color and national origin in violation of Title VII. We review *de novo* the district court's grant of summary judgment. *Pucino v. Verizon Wireless Commun., Inc.*, 618 F.3d 112, 117 (2d Cir. 2010). "Summary judgment is appropriate only if 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)(2)).[5]

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, "prohibits employment-related discrimination on the basis of race, color, religion, sex, or national origin and retaliation against employees who complain about discrimination." *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008). As relevant here, a Title VII claimant may establish an employer's liability under the statute by showing either (1) "that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of [his] race, color, religion, sex, or national origin" (*i.e.*, a "discrete act" claim), or (2) that he was subjected to harassment on account of one or more of the above bases that

---

[5] Unless otherwise indicated, we omit all internal citations, quotation marks, alterations, and footnotes from citations.

14

amounted to a "hostile work environment" (*i.e.*, a "hostile work environment" claim). *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004).

On appeal, Tassy argues that the district court erred in holding that the "continuing violation" doctrine does not apply to his failure-to-train theory of liability and that it was thus time-barred. He also contends that the district court was wrong to grant summary judgment on his hostile work environment claim. We disagree and hold that (1) to the extent Tassy asserts a distinct "failure-to-train" claim, such a claim is for a discrete act and thus the continuing violation doctrine does not apply, and (2) Tassy failed to raise a genuine dispute of material fact as to whether the allegedly hostile behavior he experienced in the workplace was motivated by hostility to his race, color, or national origin.

## I.    Failure to Train

We begin by addressing Tassy's Title VII claim based on his allegation of a failure to train. Title VII prohibits an "employer" from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see* 42 U.S.C. § 2000e-16(a) (extending Title

15

VII's protection to federal employees). To successfully bring a disparate treatment claim based on a discrete act, as opposed to a hostile work environment, a plaintiff must show that he or she suffered an "adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin." *Feingold*, 366 F.3d at 149.

A discrete act required to support such a claim is an adverse employment action that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Unlike the "incidents that comprise a hostile work environment claim, which may not be individually actionable," "each discrete act necessarily 'constitutes a separate actionable unlawful employment practice.'" *Chin v. Port Auth. of N.Y. & N. J.*, 685 F.3d 135, 157 (2d Cir. 2012) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Actionable discrete acts are often "easy to identify," *Morgan*, 536 U.S. at 114, generally because they involve material changes to an employee's conditions of employment. Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Terry*, 336 F.3d at 138.

16

As a preliminary matter, we note that it is not entirely clear whether Tassy actually brings a discrimination claim sounding in a discrete act. *See Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (recognizing that we must look at the "substance of [a] charge," not its "label" to determine what kind of claim a Title VII plaintiff brings). Certainly, a failure to train can, at least in some circumstances, be a discrete act. In *Morgan*, for instance, the Supreme Court recognized that an employee's allegation that he was "denied training" was a "discrete discriminatory act[]" under Title VII. *Morgan*, 536 U.S. at 114–15. In other situations, however, we have held that failures to train are better analyzed as hostile work environment claims. *See Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 47 (2d Cir. 2019) (holding that evidence that a plaintiff was "denied . . . training," *inter alia*, could support a jury finding that a supervisor subjected the plaintiff to a hostile work environment); *Gregory v. Daly*, 243 F.3d 687, 693 (2d Cir. 2001), *as amended* (Apr. 20, 2001) (holding that a supervisor's "depriving [plaintiff] of necessary training," among other things, if proven, "establish[ed] that plaintiff was required to endure an environment that objectively was *severely* and *pervasively* hostile").[6]

---

[6] Moreover, although Tassy premises his hostile work environment claim on both

Tassy argues on appeal that the FAA's failures to train him "were not discrete acts, but [were] part of an ongoing pattern and practice of mistreatment" directed towards him, thus constituting "a claim of a continuing violation." Appellant's Br. at 28–29; *see also id.* at 16–17 (labeling the claim as a "failure to train claim"). But the "continuing violation" doctrine is "an exception to the normal [rules governing] accrual," *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015), not an independent theory of liability. Similarly, as we have noted, "[a] pattern or practice case is not a separate and free-standing cause of action," but rather a "method of pro[ving]" a disparate treatment claim that "is not available to nonclass, private plaintiffs," such as the plaintiff here. *Chin*, 685 F.3d at 149–50.

Accordingly, to the extent Tassy seeks to assert a discrimination claim premised on something other than a hostile work environment, that claim is properly analyzed as a discrete act claim. Thus, we assume that Tassy brings both a discrete act claim premised on a failure to train and a hostile work

---

the alleged failure to train and other allegedly hostile incidents, it is conceivable that, in certain circumstances, allegations of a failure to train *alone* could sustain a claim of a hostile work environment so long as the failure is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015), by "unreasonably interfer[ing] with an employee's work performance," *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015).

18

environment claim supported in part by allegations of a failure to train. As explained below, we conclude that any such discrete act claim was not timely brought.

### A. Statute of limitations for Title VII claims

Before bringing a federal lawsuit under Title VII, a "federal government employee must timely exhaust the administrative remedies at his disposal." *Mathirampuzha*, 548 F.3d at 74; *see also Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC.").

EEOC regulations "establish the applicable administrative procedures that a federal employee must exhaust prior to filing suit." *Mathirampuzha*, 548 F.3d at 74–75. These regulations require, among other things, that a claimant "must initiate contact with a[n] [EEO] [c]ounselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). This "45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred." *Fitzgerald*, 251 F.3d at 359. In

considering the timeliness of discrete act claims, we have held that each actionable discrete act "'occur[s]' on the day that it 'happened.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) (quoting *Morgan*, 536 U.S. at 110–11).[7]

Tassy's discrete act claim is barred by the applicable statute of limitations because he has not adequately established that a discrete act occurred within 45 days prior to him contacting an EEO counselor. Tassy first contacted an EEO counselor on August 18, 2018. Thus, Tassy's discrete act claim must be based on alleged discrete acts of discrimination that occurred after July 3, 2018. But Tassy failed to produce any evidence of a discrete act occurring within this time period. Indeed, he makes no allegations that any particular training incidents occurred or that any ASIs refused him training in that period. Rather, all of the alleged discrete instances of discrimination occurred before the 45-day period began.

Tassy counters that he produced evidence showing that discriminatory conduct occurred after July 3, 2018, during the limitations period. Specifically,

---

[7] Additionally, if EEOC counseling does not resolve the matter, the "aggrieved person shall be informed in writing" by the EEO counselor of their "right to file a discrimination complaint within 15 days of receipt of the notice." 29 C.F.R. § 1614.105(d). After receiving the notice, if the claimant has not received a final agency action, the claimant "may then file a civil action . . . after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision." *Mathirampuzha*, 548 F.3d at 75 (citing 29 C.F.R. § 1614.407).

he points to a sworn affidavit in which he states that he was "subjected to a campaign of discrimination" at the Farmingdale FSDO throughout the entirety of his employment there, and that he "constantly made requests for training and repeatedly was rebuffed." App'x 471, 480. But in order to resist a motion for summary judgment, a plaintiff's "affidavit[] must be based upon concrete particulars, not conclusory allegations." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997); *see also Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (a plaintiff "must provide more than conclusory allegations to resist a motion for summary judgment"). And Tassy's vague reference to "repeatedly . . . rebuffed" requests is insufficient to support his claim that discrete acts of discriminatory conduct occurred throughout the entirety of his time at the Farmingdale FSDO— including the period after July 3, 2018.

### B. The continuing violation doctrine does not apply to Tassy's discrete act claim

Tassy argues that, even if there was no discrete act from July 4, 2018 to August 18, 2018, he has alleged a "continuing violation" that extended through the end of his employment as an ASI-in-training, bringing the earlier discrete acts within the limitations period. We disagree.

"The continuing violation doctrine, where applicable, provides an 'exception to the normal knew-or-should-have-known accrual date.'" *Gonzalez*, 802 F.3d at 220 (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). The doctrine "applies to claims composed of a series of separate acts that collectively constitute one unlawful practice," *id.*, and functions to "delay the commencement of the statute of limitations period until the last discriminatory act in furtherance of" that broader unlawful practice, *Harris*, 186 F.3d at 248. However, as we have previously held, this doctrine does not apply to "'discrete acts of discrimination or retaliation that occur outside the statutory time period,' even if other [related] acts of discrimination occurred within the statutory time period." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 105). Rather, the doctrine extends exclusively "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020).

This conclusion follows directly from the Supreme Court's decision in *Morgan*. There, the Court "unanimously rejected the . . . view that a series or pattern of 'related discrete acts' could constitute one continuous 'unlawful

22

employment practice' for purposes of the statute of limitations." *Chin*, 685 F.3d at 156 (quoting *Morgan*, 536 U.S. at 111). To the contrary, the Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," as "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* (quoting *Morgan*, 536 U.S. at 113).

Tassy counters that the continuing violation doctrine applies because he alleged that the Farmingdale FSDO maintained a "discriminatory policy or practice" to refuse him training. Appellant's Reply Br. at 15. But we squarely rejected this argument in *Chin*, holding that "[d]iscrete acts . . . , which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin*, 685 F.3d at 157; *see id.* (recognizing that "[e]ach of our sister circuits has held that an allegation of an ongoing discriminatory policy does not extend the statute of limitations where the individual effects of the policy that give rise to the claim are merely discrete acts"); *see also Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 639 (2007) ("*Morgan* is perfectly clear that when an employee alleges 'serial violations,' *i.e.*, a series of actionable wrongs, a timely

23

EEOC charge must be filed with respect to each discrete alleged violation." (quoting *Morgan*, 536 U.S. at 113)), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5.[8]

Accordingly, the continuing violation doctrine is inapplicable to Tassy's discrete act claim regardless of whether the FAA's failure to train him was based on a discriminatory policy or practice, and the claim must be dismissed as time-barred.   We therefore affirm the district court's dismissal of Tassy's claim.

## II.   Hostile Work Environment Claim

We next turn to Tassy's hostile work environment claim.   Title VII has been understood "to evince[] a congressional intent to strike at the entire spectrum of disparate treatment, which includes requiring people to work in a discriminatorily hostile or abusive environment."   *Littlejohn*, 795 F.3d at 320.   To prevail on a hostile work environment claim, a plaintiff

---

[8] This limitation on the scope of the continuing violation doctrine contrasts with some of our pre-*Chin* case law holding that "a plaintiff who files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations."   *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997); *see also Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (same).   But, as noted above, this rule was held to have been repudiated by the Supreme Court's decisions in *Morgan* and *Ledbetter*.   *See Lucente*, 980 F.3d at 309; *Gonzalez*, 802 F.3d at 220; *Chin*, 685 F.3d at 156–57.

must ultimately prove conduct (1) that is objectively severe or pervasive[, ]that is, conduct that creates an environment that a reasonable person would find hostile or abusive . . . , (2) that the plaintiff subjectively perceives as hostile or abusive . . ., and (3) that creates such an environment because of plaintiff's [membership in a protected class].

*Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

The third element

may be proven [by evidence of] harassment in such [race]-specific and derogatory terms  as to make it clear that the harasser is motivated by general hostility to the presence of [individuals of a particular race] in the workplace, or by offering some circumstantial or other basis for inferring that incidents [race]-neutral on their face were in fact discriminatory.

*Pucino*, 618 F.3d at 117–18.   In other words, a "hostile work environment claim need not be supported by direct evidence of explicit racial harassment," as "[c]ircumstantial evidence may do."   *Rivera*, 743 F.3d at 23; *see also Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547–48 (2d Cir. 2010) ("Circumstantial evidence that facially [race]-neutral incidents were part of a pattern of discrimination on the basis of [race] may consist of evidence that the same individual engaged in multiple acts of harassment, some overtly [racist] and some not.").

Tassy rests his hostile work environment claim both on the FAA's alleged failure to train him as an ASI and various "office incidents" that he contends occurred during his more than four-and-a-half-year employment at the

25

Farmingdale FSDO. [9] These alleged "office incidents" consist of (1) Tassy's co-workers not saying "good morning" to him, (2) a supervisor cursing at Tassy for not completing an assignment and "falsely report[ing]" him for using profanity in the office, (3) a co-worker gesturing toward Tassy in a manner suggesting that he smelled bad, and (4) a different co-worker ridiculing a Haitian painting Tassy had placed by his desk. *Tassy*, 540 F. Supp. 3d at 234. Tassy contends that these incidents, as well as his alleged "exclusion from training" and related actions, App'x 387, were on account of his co-workers' "discrimination against [him] because [he is] of foreign (Haitian) origin, because [his] skin color is dark and because [he is] a black man." *Id.*

As Tassy essentially concedes, none of the office incidents or failures to train were clearly or overtly racist. Tassy does not show, for instance, that any trainers

---

[9] Tassy's hostile work environment claim—like his disparate treatment claim sounding in a discrete act—must be timely to advance. The same 45-day statute of limitations applies to Tassy's Title VII hostile work environment claim. *Fitzgerald*, 251 F.3d at 359. Unlike for discrete act claims, the continuing violation doctrine applies to hostile work environment claims. *See Davis-Garett*, 921 F.3d at 42 (holding that "a charge alleging a hostile work environment claim will not be time-barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period" (quoting *Morgan*, 536 U.S. at 122)). However, because the issue of timeliness is not jurisdictional and we affirm the dismissal of the claim on other grounds, we do not address whether the hostile work environment claim was timely brought. *See Hardaway*, 879 F.3d at 491 (noting that the issue of the timeliness of the administrative exhaustion requirement of a Title VII claim can be waived).

(or anyone else, for that matter) expressly told him that he was not being trained because of his race, color, or national origin, or otherwise made expressly racist comments to him or in the office generally. Instead, Tassy relies on circumstantial evidence, pointing to three other episodes that he contends suggest that the FAA's failure to train him and the relied-upon office incidents were indeed motivated by hostility to his race, color, or national origin.

Beginning with the first episode, Tassy contends that Anderson, who, like Tassy, is Black, warned Tassy that he might face racial mistreatment at the Farmingdale FSDO. In particular, Tassy asserts that prior to Tassy taking the position at the Farmingdale FSDO, Anderson warned him to "be careful when you get there" while simultaneously pointing to the skin on Anderson's arm. App'x 473. In that same conversation, Anderson "cautioned [Tassy] to be very careful in [his] dealings" with a particular white female employee who worked at the front desk at the Farmingdale FSDO. *Id.* Tassy understood this conversation to mean that "Anderson was telling [him] that there was discrimination against Black people in the Farmingdale FSDO." *Id.* In the second episode, Tassy asserts that after he brought his concerns to Soto's attention, Soto "acknowledged that there were racial issues in the office." *Id.* Soto, however, "refused to address" the

27

issues. *Id.* Last, during another meeting with Anderson, Anderson speculated that other employees "were afraid" to be around Tassy "because they feared [he] would file a grievance or an EEO complaint." App'x 475.

But this evidence is insufficient to create a genuine dispute that the alleged failures to train and the non-overtly-racist office incidents—the alleged failure of co-workers to say "good morning," for instance, or one office worker's expression of distaste for Tassy's artwork—were motivated by hostility to Tassy's race, color, or national origin, as opposed to any other reason. While Anderson's earlier comment and gesture to Tassy perhaps suggests that racism was prevalent at the Farmingdale FSDO, the conversation predated Tassy's employment there and did not refer to any particular person or behavior that Tassy subsequently complained about. Anderson's warning about a particular white employee is also insufficient since Tassy does not claim that this employee ultimately harassed him at the Farmingdale FSDO. And, like Anderson's comment, Soto's alleged remark about general "racial issues" in the office, while probative, is insufficient to demonstrate that the particular treatment that Tassy faced was based upon his protected characteristics. Finally, Anderson's later suggestion that Tassy's co-workers might be avoiding Tassy over fears of him filing an EEO complaint against them

28

was mere speculation and cannot support the inference that the employees were actually mistreating Tassy on account of his race.

Accordingly, Tassy has not shown that any alleged wrongdoing from his supervisors and co-workers was motivated by hostility to his race, color, or national origin. We therefore agree with the district court that Tassy has failed to show that he was subjected to a hostile work environment while employed at the Farmingdale FSDO. Because we conclude that he has failed to establish that the alleged harassment was "because of" his race, color or national origin, we do not address whether Tassy's proffered evidence, when considered collectively, rises to the requisite level of pervasiveness or severity to establish a hostile work environment.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the District Court's dismissal of Tassy's Title VII claims.

29