NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALEXSAM, INC.,**

*Plaintiff-Appellant*

**v.**

**MASTERCARD INTERNATIONAL INCORPORATED,**

*Defendant-Appellee*

---

2022-2046

---

Appeal from the United States District Court for the Eastern District of New York in No. 1:15-cv-02799-ILG-VMS, Senior Judge Israel Leo Glasser.

---

Decided:  February 28, 2024

---

HUNTER T. CARTER, Arent Fox LLP, New York, NY, argued for plaintiff-appellant.  Also represented by JACQUELINE KNAPP BURT, Heninger Garrison Davis, LLC, Atlanta, GA; TIMOTHY C. DAVIS, W. LEE GRESHAM, III, Birmingham, AL; STEVEN RITCHESON, Insight, PLC, Marina del Rey, CA.

ELIOT DAMON WILLIAMS, Baker Botts LLP, Washington, DC, argued for defendant-appellee.  Also represented

2                                    ALEXSAM, INC. v.
              MASTERCARD INTERNATIONAL INCORPORATED

by MICHAEL HAWES, Houston, TX; EMILY ROSE PYCLIK, Austin, TX; ROBERT C. SCHEINFELD, JENNIFER COZEOLINO TEMPESTA, New York, NY.

_____

Before LOURIE, CHEN, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

This case involves interpretation of a patent license agreement. The district court granted summary judgment dismissing AlexSam, Inc.'s lawsuit for breach of contract against MasterCard International Inc., holding that the covenant not to sue provision in the License Agreement between AlexSam and MasterCard prohibited AlexSam's claim for breach of the Agreement's royalties provision. *See AlexSam, Inc. v. MasterCard Int'l Inc.*, No. 15-CV-2799, 2022 WL 2541433 (E.D.N.Y. July 7, 2022) (*Summary Judgment Op.*).

This case illustrates the importance of carefully reviewing the language in a covenant not to sue when entering a license agreement. AlexSam reads the covenant to prohibit it from suing for patent infringement only, while MasterCard reads the covenant much more broadly to prohibit suits not just for patent infringement, but also for breach of contract for failure to pay royalties due under the contract. We conclude that MasterCard has the better interpretation given the language in the license agreement at issue. That said, we hold that the covenant not to sue does not survive the termination of the License Agreement. Because the License Agreement has terminated, we reverse the district court's summary judgment in favor of MasterCard and remand for further proceedings consistent with this opinion.

                        BACKGROUND

AlexSam owns U.S. Patent Nos. 6,000,608 and 6,189,787 (Licensed Patents), which are both titled

"Multifunction Card System."  The patents are generally directed to pre-paid cards that can be used with point-of-sale devices.  *See, e.g.*, '608 patent, Abstract.  The patents expired on July 10, 2017.

In 2005, AlexSam and MasterCard negotiated and entered into the License Agreement at issue.  J.A. 212–28.[1] AlexSam granted MasterCard "a worldwide, non-exclusive, non-transferable . . . license under the Licensed Patents to process and enable others to process Licensed Transactions."  J.A. 213–14 ¶¶ 2.1, 1.3 (defining Licensed Transactions).  In exchange, MasterCard agreed to pay ongoing royalties in the amount of "a fee per Licensed Transaction."  J.A. 215 ¶ 4.1.

Relevant here, the License Agreement includes a "Covenant Not to Sue," which reads in full:

> Alex[S]am hereby agrees and covenants to not at *any time* initiate, assert, or bring *any claim* (in any court, administrative agency, or other tribunal, anywhere in the world) against MasterCard, for any claim or alleged liabilities of *any kind and nature*, at law, in equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, *relating to Licensed Transactions* arising or occurring before or during the term of this Agreement.

J.A. 214 ¶ 2.2 (emphases added).  The License Agreement also includes a "Term and Termination" section which recites, in relevant part:

> [T]his Agreement shall remain in full force and effect for the life of the Licensed Patents unless . . .

---

[1] The License Agreement was amended in 2006 and 2007.  J.A. 229–32.  These amendments do not affect our interpretation of the covenant not to sue.

(iv) either party breaches any material provision of this Agreement, including but not limited to Sections 4 [consideration, including royalties], 5 (last sentence only), 6, 8, 9, 11 and 18 and the other party gives written notice of such breach and the alleged breaching party fails to cure such breach within 30 days of its receipt of such notice, in which case the non-breaching party shall have the right to terminate the Agreement by giving a termination notice within sixty (60) days following the receipt of such written notice of breach. . . . *The provisions of paragraphs 4 [royalties] (but only as to activities prior to the termination date),* 8-10, 12, 14 and 15 *shall survive termination of this Agreement.*

J.A. 219–21 ¶ 7 (emphases added).

In May 2015, AlexSam filed suit against MasterCard for breach of contract in the U.S. District Court for the Eastern District of New York. J.A. 204–10. Specifically, AlexSam claimed that MasterCard "has under-reported the number of 'Licensed Transactions,'" has not paid AlexSam for each "Licensed Transactions," and has therefore "substantially breached material provisions of the License Agreement." J.A. 208. Mastercard raised several affirmative defenses and counterclaims.

Separately, on March 10, 2017, MasterCard petitioned for covered business method (CBM) review of the Licensed Patents. AlexSam opposed institution, arguing that MasterCard lacked standing under 37 C.F.R. § 42.302(a), which states: "A petitioner may not file with the Office a petition to institute a covered business method patent review of the patent unless the petitioner . . . has been sued for infringement of the patent or has been charged with infringement under that patent." Specifically, AlexSam argued that it had not sued MasterCard for patent

infringement and, moreover, that the covenant not to sue prevented it from doing so.

The Board denied institution, determining that MasterCard lacked standing to bring the CBM review. *See MasterCard Int'l Inc. v. AlexSam, Inc.*, No. CBM2017-00041, 2017 WL 4221401 (P.T.A.B. Sept. 21, 2017) (*CBM Decision*).[2]  It concluded that "the broad language of the covenant not to sue provision in the License Agreement removes any imminent possibility that Patent Owner could bring an infringement action against Petitioner," *id.* at *5, and that they "need not, and do not, address the question of whether [AlexSam's] breach of contract claim in the New York Action itself violates the covenant not to sue," *id.* at *5 n.3.

MasterCard then moved for summary judgment in the district court, arguing that AlexSam's assertions to the Board about the covenant not to sue judicially estopped AlexSam from asserting its breach of contract claims in the district court.  The district court agreed with MasterCard and dismissed AlexSam's complaint with prejudice. *AlexSam, Inc. v. MasterCard Int'l Inc.*, No. 15-CV-2799, 2020 WL 3286785 (E.D.N.Y. June 17, 2020).  We reversed. *AlexSam, Inc. v. MasterCard Int'l Inc.*, No. 2021-1785, 2022 WL 621374, at *1 (Fed. Cir. Mar. 3, 2022) (*AlexSam I*).

In *AlexSam I*, we held that the district court abused its discretion in crediting AlexSam with a position it never actually took before the Board, which led the district court to incorrectly determine that judicial estoppel prevented

---

[2] The Board issued a nearly identical decision for the '608 patent. *See MasterCard Int'l Inc. v. AlexSam, Inc.*, No. CBM2017-00042, 2017 WL 4221130 (P.T.A.B. Sept. 21, 2017).  For brevity, we only cite to the decision denying institution for the '787 patent.

AlexSam from pursuing its breach of contract claims. *Id.*
We did not opine on whether the "broadly worded covenant
not to sue 'prohibits a claim for royalties under the license
agreement,'" and we remanded for the district court to determine whether the covenant not to sue prohibits a claim
for royalties, a question of contract interpretation. *Id.* at *5
& n.3.

MasterCard again moved to dismiss for lack of subject-matter jurisdiction and judgment on the pleadings, and for
summary judgment. *Summary Judgment Op.*, 2022 WL
2541433, at *1. The district court granted MasterCard's
motion for summary judgment, holding that the broadly
worded covenant not to sue bars AlexSam's claim for unpaid royalties. *Id.* at *3.

AlexSam appeals. We have jurisdiction under
28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment under the law of the regional circuit, here, the Second
Circuit. *See Unwired Planet, LLC v. Apple Inc.*, 829 F.3d
1353, 1356 (Fed. Cir. 2016). The Second Circuit reviews a
grant of summary judgment de novo. *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009).

"In a contract dispute[,] a motion for summary judgment may be granted only where the agreement's language
is unambiguous and conveys a definite meaning." *Sayers
v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*,
7 F.3d 1091, 1094 (2d Cir. 1993). The Second Circuit views
its task as determining whether a clause is ambiguous
when read in the context of the entire agreement. *Id.*
at 1095. Determining whether writing is ambiguous is a
question of law that we review de novo. *See id.* at 1094.

In our view, the plain language of the covenant is extremely broad and covers AlexSam's suit to recover royalties for Licensed Transactions under ¶ 4.1 of the

Agreement. AlexSam agreed to not "at any time" bring "any claim (in any court . . . anywhere in the world) against MasterCard, for any claim or alleged liabilities of any kind and nature" whether known or unknown "relating to Licensed Transactions arising or occurring before or during the term of this Agreement." J.A. 214 ¶ 2.2. This language is not limited to suits for patent infringement.

AlexSam asserts that, when read in light of other sections of the License Agreement, the covenant not to sue cannot be understood to bar a suit for breach for nonpayment of royalties. Relatedly, AlexSam faults the district court for reading the covenant in isolation without considering the remainder of the License Agreement. Specifically, AlexSam asserts that the district court's interpretation of the covenant not to sue renders the requirement that MasterCard pay a fee per Covered Transaction superfluous because AlexSam has no recourse when MasterCard fails to pay. Continuing, AlexSam contends that interpretating the covenant to only bar patent infringement suits is the only reading that "would preserve the clear intent of the parties as expressed in the License Agreement taken as a whole" and not render the agreement illusory. Appellant's Br. 21.

We are not persuaded. The language of the covenant not to sue does not even mention patent infringement. Moreover, we read the agreement as providing an alternative option that would allow AlexSam to first terminate the agreement, which would then terminate the covenant not to sue, allowing AlexSam to sue for breach of contract based on MasterCard's nonpayment of royalties during the term of the agreement. Accordingly, we do not agree with AlexSam's argument that the district court's interpretation of the covenant not to sue renders the royalty payment requirement or any other provisions of the License Agreement illusory.

To elaborate, the License Agreement includes a section titled "Term and Termination," which states that the agreement "shall remain in full force and effect for the life of the Licensed Patents *unless* . . . (iv) either party breaches any material provision of this Agreement, including but not limited to Sections 4 [duty to pay royalties for Licensed Transactions] . . . and the other party gives written notice of such breach and the alleged breaching party fails to cure such breach within 30 days of its receipt of such notice, in which case the non-breaching party shall have the right to terminate the Agreement by giving a termination notice within sixty (60) days following the receipt of such written notice of breach."  J.A. 219–20 ¶ 7(emphasis added).  The License Agreement states that certain sections "shall survive termination" of the agreement, and for paragraph 4, dealing with royalties to Licensed Transactions, the duty to pay royalties survives "only as to activities prior to the termination date."  J.A. 221 ¶ 7.  In other words, the duty to pay royalties for Licensed Transactions during the life of the agreement does not go away with the termination of the agreement.  On the other hand, the covenant not to sue is not listed as a provision that survives termination of the License Agreement.  Thus, the covenant not to sue terminates with the License Agreement, leaving AlexSam free to "bring a[] claim . . . relating to Licensed Transactions."  J.A. 214 ¶ 2.2.  While we understand that this requirement to terminate the License Agreement prior to bringing suit for breach of contract has some drawbacks, it is the procedure that AlexSam agreed to.

Citing *Colton v. New York Hospital*, 385 N.Y.S.2d 65, 66 (App. Div. 1st Dep't 1976) (*Colton I*), AlexSam further argues that, under New York law, a covenant not to sue does not bar suit; rather, if breached, it may give rise to a damages remedy.  The *Colton I* case cited by AlexSam explains: "A covenant not to sue is not a release since it is not a present abandonment of a right or claim, but merely an agreement not to enforce an existing cause of action. . . .

Thus, the party possessing the right of action is not precluded thereby from thereafter bringing suit . . . ." 385 N.Y.S.2d at 66. But, contrary to AlexSam's suggestion, this case is consistent with our reading of the covenant not to sue and termination provisions in the License Agreement; AlexSam agreed to not "bring a[] claim . . . relating to Licensed Transactions," but once the License Agreement terminates, so too does the covenant.

AlexSam next asserts that under New York law, a covenant not to sue "must be strictly construed against the party asserting it . . . [and] its wording must be clear and unequivocal." Appellant's Br. 20–21 (alteration in original) (emphasis omitted) (quoting *LG Elecs. Inc. v. Saint Lawrence Commc'ns, LCC*, No. 18-CV-11082, 2019 WL 1595861, at *2 (S.D.N.Y. Apr. 15, 2019)). Here, we view the words of the covenant (and how it interacts with the rest of the provisions in the agreement) as clear and unequivocal, even if the result is in some ways harsh.

Finally, AlexSam asserts that the covenant terminated with the License Agreement more than five years ago when the patents expired and hence cannot bar the present suit for breach of contract for failure to pay royalties prior to the expiration of the License Agreement. MasterCard counters that that covenant itself includes the words "at any time," thus barring AlexSam from bringing a claim for Licensed Transactions in perpetuity. *See* J.A. 214 ¶ 2.2 ("Alex[S]am hereby agrees and covenants to not *at any time* initiate, assert, or bring any claim . . . against Master-Card . . . relating to Licensed Transactions arising or occurring before or during the term of this Agreement." (emphasis added)). We disagree that the covenant bars AlexSam in perpetuity. Instead, we read the termination clause to provide that the covenant not to sue terminates with the termination of the License Agreement. As such, we think the most reasonable interpretation (and, indeed, the only one that makes sense in light of AlexSam's "illusory contract" argument above) is that the entire covenant

not to sue (including the language "at any time") expires with the expiration of the License Agreement. Stated differently, we interpret the language "at any time" to not mean in perpetuity, but rather "at any time" means at any time during the term of the License Agreement. This is consistent with *Colton I*, 385 N.Y.S.2d at 66, ensures that the consideration (i.e., payment of royalties) in exchange for the license was not illusory, and is consistent with MasterCard's contention that AlexSam's recourse for nonpayment of royalties (i.e., filing suit for breach of contract) required AlexSam to first terminate the License Agreement.

MasterCard next argues that even if the covenant terminates with the License Agreement after expiration of the patents, AlexSam represented to the PTO that the covenant not to sue barred a patent infringement suit even after expiration of the patents and this representation bars AlexSam from now arguing otherwise. But as explained below, the parties never discussed the impact of expiration of the patents on the term of the covenant not to sue during the CBM proceedings before the PTO. Nor did AlexSam cite or otherwise rely on the "at any time" language to suggest that the covenant not to sue exists forever. Rather, review of the CBM submissions suggests that AlexSam was responding to a different, more specific argument presented by MasterCard.

In March 2017, MasterCard petitioned the PTAB for CBM review of AlexSam's patents. On appeal now, MasterCard cites AlexSam's statements made to convince the PTO to deny institution of the CBM after the Licensed Patents (and the License Agreement) expired on July 10, 2017. Appellee's Br. 37 (citing J.A. 1628–31). The PTAB had asked for supplemental briefing on "the effect of the covenant not to sue provision on Petitioner's standing

under 37 C.F.R. § 42.302(a)."[3]  *CBM Decision*, 2017 WL
4221401, at *5.  MasterCard told the PTO that the cove-
nant not to sue was void as a result of AlexSam's filing of
this lawsuit.  In response, on August 30, 2017, after expi-
ration of the patents, AlexSam stated:

> The payment of royalties is Petitioner's obligation
> under the License Agreement – not a condition of
> the [covenant not to sue].  Petitioner's intentional,
> and admitted, refusal to pay royalties it owes sup-
> ports a claim for breach, not patent infringement.
> Further, the [covenant not to sue] provides no ex-
> plicit means for its revocation. . . .  The facts do not
> support the conclusion that the [covenant not to
> sue] was, or could be, revoked by the filing of Pa-
> tent Owner's breach of contract claim.
>
> . . .
>
> Petitioner has not been sued for infringement and
> the [covenant not to sue] is further evidence that
> Patent Owner cannot sue Petitioner, who is a licen-
> see, for infringement.

J.A. 1629–30 (emphasis omitted).  AlexSam did not specif-
ically quote or mention the "at any time" language, alt-
hough it did argue that the covenant "provides no explicit
means for its revocation."  J.A. 1629.

> The PTAB subsequently held:
>
> We also find no basis to conclude that the covenant
> was, or could be, revoked based on Petitioner's

---

[3] As noted above, 37 C.F.R. § 42.302(a) states:  "A peti-
tioner may not file with the Office a petition to institute a
covered business method patent review of the patent un-
less the petitioner . . . has been sued for infringement of the
patent or has been charged with infringement under that
patent."

> alleged breach and Patent Owner's filing of the breach of contract claim in the New York Action. The covenant prohibits Patent Owner from bringing an infringement claim for Licensed Transactions at "any time," which would include now or at any point in the future.

*CBM Decision*, 2017 WL 4221401, at \*6 (emphasis omitted).

The doctrine of judicial estoppel serves to prevent litigants from asserting claims in a court proceeding that are directly contrary to or inconsistent with a prior statement made in a previous proceeding. *See New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (outlining several factors to inform the decision of whether to apply judicial estoppel). The Second Circuit has explained that judicial estoppel "is properly invoked where: (1) a party's later position is clearly inconsistent with its earlier position, and (2) the party's former position has been adopted in some way by the court in an earlier proceeding." *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019) (citing *New Hampshire*, 532 U.S. at 750–51). Also, the Second Circuit "often, but not always, require[s] a showing that the party asserting the two inconsistent positions would derive an unfair advantage against the party seeking estoppel." *Id.* (citing *New Hampshire*, 532 U.S. at 751).

Contrary to MasterCard's assertion, we view AlexSam's current position as not directly contrary to or inconsistent with its statements made to the PTO regarding the covenant not to sue. Here, review of the supplemental briefs and the PTAB's decision shows that the issue there was whether the filing of this breach of contract action rendered the covenant not to sue void. That is the issue on which AlexSam spoke and the issue on which the PTAB ruled. That the PTAB relied on the "at any time" language to reach its conclusion does not mean that AlexSam argued as much.

ALEXSAM, INC. v.                                                                13
MASTERCARD INTERNATIONAL INCORPORATED

This mirrors, and is consistent with, our decision in *AlexSam I*. There, MasterCard also argued that AlexSam took inconsistent positions. *See AlexSam I*, 2022 WL 621374, at *1. And it argued inconsistency based on a single sentence (without context) in AlexSam's supplemental briefing before the Board—the same section of the supplemental briefing that MasterCard invokes in this appeal. *Compare AlexSam I*, 2022 WL 621374, at *4–5, *with* Appellee's Br. at 37 (citing J.A. 1628–31). Like our decision in *AlexSam I*, we analyze whether judicial estoppel applies not by analyzing an isolated sentence or section of a brief, but by considering the context, bearing in mind not only the arguments made but also what the arguments were in response to. In doing so here, we view AlexSam as maintaining consistent positions in its arguments before the Board and its arguments before the district court.

Finally, MasterCard argues that we should hold that AlexSam lacked standing at the time that it filed suit in this case, asserting that "even if the [covenant not to sue] expired with the patents in 2017, because Alex[S]am's complaint was filed in 2015 when the [covenant] was alive under Alex[S]am's interpretation, Alex[S]am's suit for royalties was precluded." Appellee's Br. 36. MasterCard argues that we should dismiss AlexSam's complaint for failure to state a claim for the same reasons. Appellee's Br. 38–39. We do not reach these issues, which were not addressed by the district court, and instead remand for the district court to address one or both in the first instance.

CONCLUSION

We have considered MasterCard's remaining arguments and find them unpersuasive. For the reasons above, we reverse the district court's summary judgment, which hinged on whether the covenant barred AlexSam's claim for breach of the agreement's royalty provision. Because we hold that the covenant not to sue terminated when the License Agreement terminated, thus allowing AlexSam to

sue for failure to pay royalties prior to that time, we reverse and remand.

## REVERSED AND REMANDED

### Costs

No costs.